## WM. McCorquodale v. The State.

### No. 3137. Decided December 20, 1905.

### (On writ of error in the Supreme Court of the United States, 1908)

**1.—Murder—Jury and Jury Law—Special Venire.**

Where upon trial for murder the court overruled a motion to postpone on account of absent jurors, and issued instanter attachments for said jurors; and before defendant was required to pass on any talesman all of said jurors, with the exception of one or two, were brought into court, and defendant did not exhaust his challenges, there was no error.

**2.—Same—Challenge for Cause.**

Where upon trial for murder the State challenged a juror on account of conscientious scruples in regard to inflicting the death penalty, after it had accepted him and before he was accepted by both parties and sworn, there was no error; and the State did not waive its right of challenge because it

had first omitted said question, but had not omitted the same in accepting a previous juror.

#### 3.—Same—Evidence—Motive.

Upon trial for murder where the evidence showed that defendant and deceased were rivals for the attention and carnal favors of a certain negro woman, there was no error in permitting the State to show that the defendant tried to induce said woman to leave the house for which deceased was paying rent, and that defendant threatened to burn up everything the woman had if she did not leave the house.

#### 4.—Same—Evidence—Letters—Motive.

Where upon trial for murder the evidence showed rivalry between the deceased and defendant concerning a certain woman, there was no error in admitting in evidence several letters written by the defendant to said woman, which showed intimate relations between them, and also referred to the deceased in more or less threatening terms.

#### 5.—Same—Imputing Crime to Another—Evidence.

The rule in regard to imputing crime to another requires that the inculpatory facts are such as proximately connect the party not on trial with the transaction; and the mere fact that the deceased had threatened to kill other parties was not sufficiently cogent to be admitted in evidence, without showing that such certain party had been placed in such position that he might have committed the homicide.

#### 6.—Same—Dying Declaration—Evidence.

Where upon trial for murder the evidence showed some conflict as to the proper predicate for admitting dying declarations, and there was sufficient predicate laid by the State's testimony for the introduction of deceased's dying declaration, and the court submitted the question of proper predicate in appropriate instruction to the jury, there was no error. Following Sims v. State, 36 Texas Crim. Rep., 256, and other cases.

#### 7.—Same—Evidence—Impeaching Dying Declarations.

Where upon trial for murder the dying declaration of deceased was that he looked over his shoulder and recognized defendant at night, testimony by defendant's witness that he asked the deceased how he knew who shot him, and that deceased stated repeatedly that he recognized him by the flash of the pistol, was inadmissible for the purpose of impeaching deceased's dying declaration, as the deceased in his dying declaration did not make any statement as to how or by what sort of light he recognized the defendant, and the evidence further showed that a light was shining from a window where defendant was supposed to have stood when he fired the shot, and that the defendant was almost in touching distance of deceased. Such testimony was therefore inadmissible, although defendant could have shown that it was impossible to recognize a person firing a pistol at night by the flash of the pistol.

#### 8.—Same—Evidence.

Where upon trial for murder a witness for the defendant testified that defendant's conduct on the night of the homicide was natural, and the State on cross-examination asked witness the question whether defendant was not an old poker player and not easily excited, to which question exception was sustained, and there was no testimony before the jury on this question, there was no error.

#### 9.—Same—Misconduct of Jury.

Where upon trial for murder the defendant set up the misconduct of a certain juror to set aside the verdict, because said juror had expressed an opinion with reference to defendant's guilt some time before such juror was summoned, and the investigation upon this question showed that such juror denied said expression of opinion; that he stood out for acquittal for a long time; that defendant was anxious to get him on the jury; that

the juror was not examined upon his voir dire as to his conclusions as to the guilt or innocence of defendant or bias in favor of or prejudice against defendant; that if the juror had made such remark it was careless and meaningless, etc., there was no error.

### 10.—Same—Charge of Court—Murder in Second Degree—Harmless Error— Reasonable Doubt.

Where upon trial for murder there was serious doubt whether the evidence suggested the theory of murder in the second degree, but the court nevertheless charged upon murder in the second degree, murder in first degree and reasonable doubt between degrees; and the defendant excepted to the court's general charge in not instructing the jury on inadequate cause, etc., upon a state of facts which was the only one upon which murder in the second degree could be based, there was no error. See charge on murder in second degree held sufficient under the facts of the case, and the expressions "sudden transport of passion" harmless error, if error. Neither did said charge infringe on doctrine of reasonable doubt.

### 11.—Same—Charge of Court—Manslaughter.

Where upon trial for murder the evidence did not raise the issue of manslaughter, there was no error in the court's failure to charge thereon.

### ON REHEARING.

### 12.—Same—Jurisdiction—Judgment — Practice on Appeal—Rehearing — Mandate.

The Court of Criminal Appeals has plenary power over its judgments during the term, and even after the term, and although a motion for rehearing may have been overruled; in order to support its jurisdiction and to ascertain such matters of fact as may be necessary to exercise jurisdiction. This includes the power of the court to withhold its mandate. Following Bailey v. State, 11 Texas Crim. App., 140, and other cases.

### 13.—Same—Reforming and Correcting Judgment—Practice on Appeal—Statutes Construed.

Under article 904 Code Criminal Procedure, the clause "reform and correct" has more force than if the statute contained the power merely to "correct"; it therefore has a larger signification, and includes the power to make anew and to rectify the judgment of the trial court.

### 14.—Same—Case Stated.

Where upon appeal from a conviction of murder the appellate court has before it, in the record, the foundation of the judgment, including the verdict of the jury and the sentence of the court, said court can do that which the court a quo should have done, that is, reform and correct the judgment so as to include the 9th and 10th requirements of article 831 Code Criminal Procedure which were omitted in the trial court, adjudging the appellant guilty as found by the jury, and affixing the punishment as fixed by the verdict of the jury; upon motion of the State, after the appellant's motion for rehearing had been overruled, and at a subsequent term of said appellate court, by withholding the mandate, recalling the transcript and entering the proper judgment in the appellate court. Davidson, Presiding Judge dissenting.

Appeal from the District Court of Brazos. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of murder in the first degree; penalty, imprisonment for life in the penitentiary.

The opinion states the case. The defense was alibi.

A. G. *Board, Doremus & Butler, J. G. Minkert, T. S. Henderson, Brockman & Kahn* and *E. T. Branch,* for appellant. On question of State's challenge of juror for cause: Baker v. State, 3 Texas Crim. App., 525; Hardin v. State, 4 Texas Crim. App., 363; Drake v. State, 5 Texas Crim. App., 656; Evans v. State, 6 Texas Crim. App., 517. On question of admitting testimony of Ida McGrew: Earle v. State, 47 Texas Crim. App., 559; 12 Texas Ct. Rep., 267; Gaines v. State, 53 S. W. Rep., 626; Holley v. State, 39 Texas Crim. Rep., 301; Godwin v. State, 38 Texas Crim. Rep., 466; Fossett v. State, 55 S. W. Rep., 497; Strange v. State, 38 Texas Crim. Rep., 280; Melton v. State, 83 S. W. Rep., 822; Drake v. State, 5 Texas Crim. App., 649. On question of imputing crime to another: Spears v. State, 56 S. W. Rep., 347; Barfield v. State, 51 S. W. Rep., 908; Huffman v. State, 28 Texas Crim. App., 174; Dubose v. State, 10 Texas Crim. App., 230. On question of dying declaration: Barnes v. Commonwealth (Ky.), 61 S. W. Rep., 735; Ledbetter v. State, 23 Texas Crim. App., 256; Irby v. State, 25 Texas Crim. App., 203; Edmondson v. State, 41 Texas, 500; Ex parte Myers, 22 Texas Crim. App., 216; 10 Am. & Eng. Enc. of Law, p. 367; King v. State, 34 Texas Crim. Rep., 228. On question of impeaching dying declaration: Felder v. State, 23 Texas Crim. App., 477; Hamblin v. State, 34 Texas Crim. App., 385; Morelock v. State, 90 Tenn., 531; Shell v. State, 88 Ala., 18; People v. Lawrence, 21 Calif., 368. On question of laying predicate for dying declaration and submitting same to jury: Kelly v. State, 62 S. W. Rep., 915; Rains v. State, 26 S. W. Rep., 398. On question of charge on murder in second degree: Gaines v. State, 53 S. W. Rep., 626; Rockhold v. State, 16 Texas Crim. App., 577; Pitts v. State, 29 Texas Crim. App., 374; Melton v. State, 83 S. W. Rep., 823; Jones v. State, 33 Texas Crim. Rep., 499; Spivey v. State, 77 S. W. Rep., 445; Benevidis v. State, 14 Texas Crim. App., 378; Conner v. State, 23 Texas Crim. App., 378; Williams v. State, 15 Texas Crim. App., 623; Neyland v. State, 13 Texas Crim. App., 536; Orman v. State, 24 Texas Crim. App., 504; Orange v. State, 47 Texas Crim. Rep., 337; 11 Texas Ct. Rep., 513; Hatchell v. State, 47 Texas Crim. Rep., 380; 11 Texas Ct. Rep., 706. On question of misconduct of jury: Aud v. State, 35 S. W. Rep., 674; Armendares v. State, 10 Texas Crim. App., 44; Mitchell v. State, 36 Texas Crim. Rep., 278; Graham v. State, 28 Texas Crim. App., 583; Hanks v. State, 21 Texas, 526; Long v. State, 32 Texas Crim. Rep., 144; Sewell v. State, 15 Texas Crim. App., 62; Riley v. State, 81 S. W. Rep., 711; Henrie v. State, 41 Texas, 573. On question of reforming and correcting judgment:

For requisites of a judgment see article 831, C. Crim. Proc., and authorities cited under section 1178, White's Annotated Code of Crim. Proc.

We desire, in the first place, to call the court's attention to the

state of the law, as it now exists deduced from the various authorities, upon the right of this court to reform and correct the judgment of the court below, and when it can either reform or correct such a judgment, and we submit the following conditions under which this court can do so:

(a) First: We will observe that the power of the court to "reform," or "correct," a judgment, as provided in article 904 of the Code of Criminal Procedure, means that this court has the authority, "when the law and nature of the case requires it," to correct or reform such judgment, when, for instance, a man has been indicted for horse theft, and found guilty of horse theft by the verdict of the jury, and his penalty assessed at, say five years, and the judgment and sentence erroneously recites two years, instead of five. Hill v. State, 10 Texas Crim. App., 673; McDonald v. State, 14 Texas Crim. App., 504; Carr v. State, 9 Texas Crim. App., 463; Rivers v. State, 10 Texas Crim. App., 177; Lanham v. State, 7 Texas Crim. App., 139; Wright v. State, 23 Texas Crim. App., 313; Robinson v. State, 24 Texas Crim. App., 4; Jackson v. State, 23 Texas Crim. App., 183; Grisham v. State, 19 Texas Crim. App., 504.

(b) When the indictment is, for instance, for passing a forged instrument, and the verdict of the jury is for that offense, but the judgment and sentence are forgery, this court has not the power to correct or reform the judgment, and make it a judgment and sentence for passing a forged instrument. Small v. State, 38 S. W. Rep., 798; Barfield v. State, 41 S. W. Rep., 610; Womble v. State, 43 S. W. Rep., 114.

Judge Davidson, in the case of Small, supra, dissented and cites in the course of his dissent, Peterson v. State, 25 Texas Crim. App., 70; Ex parte Strey, 28 S. W. Rep., 811; Rivers v. State, 10 Texas Crim. App., 177; Hill v. State, 10 Texas Crim. App., 673; McDonald v. State, 14 Texas Crim. App., 504; Short v. State, 23 Texas Crim. App., 312; Robinson v. State, 24 Texas Crim. App., 4; Ex parte Hunt, 28 Texas Crim. App., 361; Lockhart v. State, 29 Texas Crim. App., 35; Ex parte Cox, 29 Texas Crim. App., 85; Ex parte Moseley, 30 Texas Crim. App., 338.

"The decision of the court granting or refusing a rehearing is final, and it is not reviewable by appeal or by mandamus." Drake v. State, 29 Texas Crim. App., 275; Garner v. State, 36 Texas, 694; Powers v. Commonwealth (Ky.), 71 S. W. Rep., 494. And also the following authorities: 18 Am. & Eng. Encycl., Pl. & Pr. page 7.

The Supreme Court will not, after the submission of a cause, and after its decision, grant a rehearing and award a certiorari to perfect the record, when the motion to rehear is based on the defectiveness of the record, and when no excuse is offered to show why the defect was not discovered before the submission. Ross v. McGowen et al., 58 Texas, 603; Davis v. McGehee, 24 Texas, 209;

Hilburn v. Harris, 2 Texas Civ. App., 395.   Cited at page 47, note 4, 18 Am. & Eng. Encycl., Pl. & Pr.

At common law, as a general rule, the petition must be filed before the end of the term at which the case is decided, and in most jurisdictions, a failure to make the application within this period is fatal, exceptions to the rule not being recognized by the courts.   18 Am. & Eng. Encycl., Pl. & Pr., page 52, and note 6; Chambers v. Hodges, 23 Texas, 104; Burr v. Lewis, 6 Texas, 76.

See cases construing rules of Supreme Court on motion for rehearing:   Baldridge v. Scott, 48 Texas, 178; Howard v. McKenzie, 54 Texas, 171; Sams v. Creager, 85 Texas, 497; Houston & T. C. Ry. Co. v. Grigsby, 13 Texas Civ. App., 639; Franklin v. Hulbert, 1 Texas App. Civ. Cas., sec. 203.

The State can not now be heard to claim anything by reason of the condition of the record in this case.

As is well known to this court, this cause was appealed (and jurisdiction attached under article 884, Code of Criminal Procedure), and the judgment was affirmed, after the matter had been under consideration by this court for several months, on December 20, 1905; and then, within fifteen days, appellant filed his motion for rehearing, which was overruled on the 24th day of March, 1906.   The State, neither before the original judgment of affirmance was rendered, nor while the motion for rehearing by appellant was pending, filed any suggestion or motion, or made any point whatever of the facts now complained of in the motion that is now before the court.   Garner v. State, 36 Texas, 694.

In the case at bar, the State is seeking to have, not a judgment that was correctly entered, in the court below now made a part of the record, but to have a judgment entered here for the first time; and we take it, in any event, that before the State could be heard to have such a judgment entered here, it would have to be shown that there was, in fact, such a judgment entered in the court below, but not correctly copied into the record by the clerk, and then it would have to proceed either by motion for rehearing with a certified copy of the judgment as actually entered in the court below (under the authority of the Cannady case), or it would have to move for a certiorari.

As presented, this court would be without authority to grant the relief, even if the judgment had been properly entered in the court below, unless the rule as to certiorari, or as to accompanying a motion for a rehearing with a certified copy upon the point, as laid down in the Cannady case was complied with.     ·

The decree of the lower court, which has been appealed from, can not be modified on rehearing in the Appellate Court.   18 Am. & Eng. Encycl. of Pl. & Pr., p. 62, note 1.

In conclusion we again insist, as we did in our original brief upon this motion, and this court is without authority to grant this

motion, and that had the question been raised before the case had been affirmed, or after affirmance, upon rehearing within fifteen days of the date of the judgment, which was rendered on December 20, 1905, this court could then not have reformed or corrected the judgment, but if it had made any order at all, under the great weight of authority, would have reversed and remanded the case for another trial, but, under some exceptional cases, would have dismissed the appeal.

To restate: The power of this court under article 904, Code of Criminal Procedure, deducible from the weight of authority, is as follows:

(a) Where there is a judgment entered, and that judgment conforms to the indictment and the verdict, and the sentence does not conform to the judgment, this court has power to reform the sentence and correct so as to make it conform to the judgment, verdict and indictment.

(b) Where the indictment is for one offense, and the verdict of the jury finds the defendant guilty of that offense, and the judgment entered up adjudges the defendant guilty of a different offense, and of an offense not comprehended within the indictment, and sentence follows the erroneous judgment, this court can not reform or correct the judgment, but must either reverse and remand the case, or reverse and dismiss, the weight of authority being with the proposition that it should reverse and remand.

(c) Where there is no judgment, or what amounts to no judgment, as in the case at bar, and the court's attention is called to that fact before the case is affirmed, or upon rehearing, and before rehearing is overruled, this court, in such case, under the weight of authority, should reverse and remand, but at all events it could not reform or correct, while it might, under some exceptional and isolated authorities, reverse and dismiss. In the Longoria case, 44 S. W. Rep., 1089, this court, in a judgment identical with this one, where its attention was called to it before the case was affirmed, reversed and dismissed the case.

(d) After affirmance, and rehearing has been denied, while this court has control over its own judgments to the extent that it can correct any clerical error in them, or to the extent of having them enforced, it can not even dismiss an appeal for the want of a judgment, but jurisdiction having attached under article 884, Code of Criminal Procedure (see Ex parte Juneman et al., 28 Texas Crim. App., 486), and this court having affirmed the case and denied rehearing, the State, in whose interest the judgment of this court was rendered, can not be heard to complain of the judgment of this court, nor has this court the power to go behind its own judgment under such conditions, and reverse, and dismiss the appeal.

(e) But if this court should decide all the other propositions laid down by us against us as to its power, it still can not do more

than to cancel its own judgment and dismiss the appeal, if, indeed, the court should hold it has even that power under the state of case here presented. Longoria v. State, 44 S. W. Rep., 1089.

In other words, as deducible from the authorities, and largely by the weight of authority, this court can, under said article 904 of the Code of Criminal Procedure, only correct a judgment that has been actually rendered in the court below. Where sentence does not conform to the judgment, verdict and indictment, the sentence can be corrected; but where both the judgment and the sentence are for a different offense than that charged in the indictment and found by the verdict of the jury, this court has not the authority to reform or correct at any time, its authority being confined to a judgment rendered for the proper offense, and where the wrong number of years, or a sentence for the wrong offense has been had. And in the case at bar this court has no power or authority at this time to do anything other than whatever may be necessary to correct some defect in its own judgment, or to enforce that judgment. And, as insisted in the original brief, and upon oral argument by us, we urge that the judgment of this court is not defective, and that unless some agency entirely extraneous to this court's judgment should intervene, there will be nothing to prevent its being carried into effect. Therefore, we pray that this court refuse the State's said motion, and respectfully submit this, our supplemental brief.

*J. E. Yantis,* Assistant Attorney-General, *V. B. Hudson, Lamar Bethea* and *W. E. Spell,* for the State.—On question of challenge of juror by State: Sinclair v. State, 35 Texas Crim. Rep., 130; Mitchell v. State, 36 Texas Crim. Rep., 278; Habel v. State, 28 Texas Crim. App., 588; Hudson v. State, 28 Texas Crim. App., 323; Suit v. State, 30 Texas Crim. App., 319; Greer v. State, 3 Texas Ct. Rep., 749; Miller v. State, 83 S. W. Rep., 393; Brown v. State, 65 S. W. Rep., 912; Black v. State, 81 S. W. Rep., 303. On question of motive: Matheis v. State, 34 Texas Crim. Rep., 39; Morrison v. State, 51 S. W. Rep., 358; Weaver v. State, 10 Texas Ct. Rep., 741; Gonzales v. State, 31 Texas Crim. Rep., 508; Hunt v. State, 33 Texas Crim. Rep., 353; Harris v. State, 31 Texas Crim. App., 411; Wilkerson v. State, 31 Texas Crim. Rep., 86. On question of imputing crime to another: Wallace v. State, 10 Texas Ct. Rep., 915; Kunder v. State, 22 Texas Crim. App., 65; McInturf v. State, 20 Texas Crim. App., 335; Harris v. State, 31 Texas Crim. App., 411; Murphy v. State, 36 Texas Crim. Rep., 24. On question of submitting predicate to jury on dying declarations: Hopkins v. State, 53 S. W. Rep., 619; Martinez v. State, 56 S. W. Rep., 58; Sims v. State, 36 Texas Crim. Rep., 154; Highsmith v. State, 41 Texas Crim. Rep., 32; 50 S. W. Rep., 723; Price v. State, 70 S. W. Rep., 966; Polk v. State, 35 Texas Crim. Rep., 495. On question of charge of court: Boyd v. State, 28 Texas

Crim. App., 137; Pollard v. State, 7 Texas Ct. Rep., 548. On question on charge on murder in second degree: White v. State, 30 Texas Crim. App., 652; Squires v. State, 54 S. W. Rep., 770. On question of reasonable doubt: Edens v. State, 55 S. W. Rep., 815. On question of misconduct of jury: Herrington v. State, 2 Texas Ct. Rep., 809; Snodgrass v. State, 36 Texas Crim. Rep., 207.

An examination of •the transcript will disclose the fact that the judgment entered does not contain requisites Nos. 9 and 10 as required by article 831, Code Criminal Procedure. This article sets out the requisites of a judgment, and provides what it shall contain. Article 904, Code Criminal Procedure, provides, "The Court of Criminal Appeals may affirm the judgment of the court below, . . . or may reform and correct the judgment, as the law and nature of the case may provide." Accordingly the law provides that this court has jurisdiction to reform and affirm the judgment herein. See Turner v. State, 44 Texas Cr. Rep., 69; Burks v. State, 55 S. W. Rep., 824. And for other decisions, section 1262, White's Ann. Code Criminal Procedure. The judgment being defective in the particulars pointed out, this court should reform the judgment to comply with the statute cited. Bailey v. State, 11 Texas Crim. App., 140; Craddock v. State, 15 Texas Crim. App., 641; Kinney v. State, 45 Texas Crim. Rep., 500.

DAVIDSON, Presiding Judge.—Appellant was assessed a life term imprisonment in the penitentiary under conviction of murder in the first degree.

Bill of exceptions number 1 complains of the action of the court refusing to postpone the selection of the jury until certain named jurors could be attached and brought into court. The court says in explanation: "The court heard the evidence of the sheriff as to where the said jurors resided, and ascertained they lived from eight to twenty miles from the courthouse. Instanter attachments for said jurors were issued, and the motion overruled. Before defendant was required to pass on any talesmen all of said jurors, with the exception of one or two were brought into court, and after the jury were finally empaneled defendant had not exhausted his challenges." There was no error in this. It has been frequently decided.

Another bill complains that the juror, McSwain had been tested as to his qualification, and accepted by the State, and before the defendant passed upon him he called attention to the fact, that they had not inquired of him as to whether or not he had conscientious scruples in regard to inflicting the death penalty. .Upon inquiry the juror stated he had, and the State then challenged him for cause. This was not error. He could not be considered a juror in the case until he had been accepted by both parties and sworn. Nor is there any merit in the contention that because the State

had accepted the juror McGhee, who had replied he had conscientious scruples, that therefore the State waived that question as to McSwain. This did not take away from the State the right to challenge McSwain for that reason.

The theory of the State was that deceased and defendant were rivals for the attention and carnal favors of the negro woman, Ida McGrew; and that appellant shot deceased, Spell, on account of jealousy growing out of this relation. In this connection, the State asked this witness—Ida McGrew—the question: "If the defendant ever tried to induce her to leave the house in which she was then living, and for which deceased was paying rent, and if he made any threats against her in the event she failed to do so?" Exception was reserved, because of its irrelevancy; and because it would serve to inflame the minds of the jury and prejudice them against him. This being overruled, witness answered, that defendant did try to get her to leave said house, stating if she did not leave it, he would burn up everything she had. This was not error. The evidence shows that appellant and deceased had been keeping the woman Ida McGrew. She seems to have been alternating between them to some extent, and the deceased had finally obtained the better of the race in the rivalry. This seemed to have very greatly enraged appellant. Deceased, by the answer of the witness, is shown to have been paying the rent on the house in which she was living. This was a circumstance that was admissible, bearing upon the question of the feelings of appellant towards the deceased, and tended to show the motive for the homicide.

Omitting the dying declaration of deceased, this was a case of circumstantial evidence. Several letters written by appellant to the negro woman were introduced in evidence. Various objections were urged to this testimony. We think the letters were admissible, for the same reason that the testimony just mentioned was. They were of a love-sick nature, and showed intimate relations had existed between appellant and the woman, and also referred to deceased, in two or three of them, in terms more or less threatening. For instance, the first introduced is dated,

"Bryan, Texas, September 26, 1904.

Ida:

Henry Spell, the cowardly puppy, have got them notes I wrote you, taking them around showing them. A man that is that low down is sorrier than the worst negro in town. Now you give the pup this note. I want him to see it. He can't face a white man; he is so sorry.                                                    Mc."

Another letter, dated June 29, had this reference to deceased: "I want to talk with you, and I want you to let me out or Henry Spell

one, for I want to see you every night myself, and I don't want to come without you telling me. You need not be afraid of him. He knows better than to harm you." In another letter he says: "Ida: Now, if you will turn that fool loose, I will give you more than he makes. He ain't worth a damn, and I will fix you up. I said a heap to you, but it was because I loved you so hard." It is not necessary to repeat the contents of the letters, and the above letter and extracts are copied simply to show that deceased was connected in the mind of appellant with the woman, and of the enmity engendered by reason of the relations existing between the parties. These were clearly admissible to show the state of appellant's mind towards the deceased, and as bearing upon the motive that he may have had to perpetrate the homicide.

Cam Jones, testified for appellant, and was asked: "If deceased, Henry Spell, had ever sent any message by him to Zack Franklin, in regard to the woman, Ida McGrew?" The evidence had shown that deceased was killed while at the house of Ida McGrew, and that the woman was the paramour of both deceased and defendant. The State's theory is that the defendant and deceased were rivals for her affections and carnal favors. The bill shows that the State objected to the question asked of the witness, because it was immaterial and irrelevant. Objection being sustained, it is stated the witness would have answered, had he been permitted, that deceased had told him to tell said Franklin that if he, Franklin, did not cease his visits to Ida McGrew, he (Spell) would kill him, and that this was shortly prior to the homicide. The purpose stated was to show that other parties than appellant were in the habit of visiting at the house of Ida McGrew, and that other parties than appellant had a motive for killing deceased. Sometimes this character of evidence becomes material and admissible. Such has been the rule since Dubose v. State, 10 Texas Cr. App., 230. The rule in regard to this may be thus stated, that investigations with reference to other parties than the accused could not be permitted, unless the inculpatory facts are such as proximately connect the party not on trial with the transaction. In other words, if a party other than the accused had the motive and opportunity, and was placed in such proximity to the homicide as to show he may have been the guilty party, the evidence may have been admissible. But remote acts and threats would not be, unless other facts in closer proximity and pertinently connecting the third party with the homicide at the time of the commission of the offense was shown. The mere fact that deceased may have had animus is not sufficient. The mere fact that deceased had threatened to kill other parties is not sufficient to admit it, unless there are other facts to show that the third party may have been placed in such position that he may have committed the homicide. The bill does not bring it within the rule.

The dying declarations of deceased were admitted. It is contended

that the predicate is not sufficient. Cole Spell (brother of deceased) directly after the shooting went to where his brother was; had a short talk with him, went down in town and undertook to arrest defendant, who refused to be arrested by him, because he had no warrant. He returned to the bedside of his brother, and had a conversation with him. Before this conversation, deceased asked that all the parties be sent out of the room. This was done. Deceased said to his brother, "I know I am not going to get well, and I want to tell you who did it." He was perfectly rational at the time. The witness Mitchell (justice of the peace) says he arrived at the place where deceased was after being shot; that he went into the room, and deceased recognized him. He was suffering from a gunshot wound in the back, which came out in front, near the nipple. He says he did not hear the doctors explain or tell deceased of the seriousness of the wound. His testimony shows that deceased was of sound mind. He would talk a little, and then would stop. This witness said he thought from the first that the wound was fatal. "I asked the doctors if there was any chance for recovery, and the doctor said there was little. I then said, I thought it was my duty to take a dying statement. I then asked Tom Spell (a brother of deceased) to ask deceased if he would make a statement. He came and informed me that his brother (Henry Spell) would make a statement to me. I then went into the room where he was lying on the bed. I then asked deceased if he realized he was in a dying condition, and he replied, 'I do.' I then said, 'In all probability would not recover,' and he said, 'I do.' I then asked him, if he knew who shot him. This was about nine o'clock.

Nagle, county attorney, reached deceased after Mitchell took the statement. "I did not know what formality Mitchell had gone through in taking the dying declaration. I went in the room where deceased was lying, and asked 'How are you?' And the doctor asked him if he knew me, and he said: it is Mr. Nagle. I said, 'Henry, do you think you are going to die?' And he said, 'I have not given up all hope,' and said, 'I don't see why I should not recover.' I had spoken to him several times as to his condition, so as to lay the predicate for his dying declaration, and each time he did not indicate he had given up hope. The last statement of Dr. Emory was, 'Henry you are in a mighty bad condition, and you may perhaps die.' At that time he said, 'I know it.' I was never satisfied with his condition. It was about 9 o'clock when I started to the Moseley place, where Spell was. It must have been 9:30, when he made his first statement to me." Dr. Emory testified: "Up to the time Mitchell took the dying statement or declaration of deceased, I had not indicated to him that he was seriously wounded and would probably die. At the time C. M. Spell (brother of deceased) took a statement or declaration from the deceased, I had not indicated to him that he was seriously hurt. At the time that Mr. Nagle

talked to deceased, I had told him of the serious nature of his wound, and that in all probability he would not get well." This is the testimony pro and con in regard to the predicate. Thereupon Cole Spell (brother of deceased) was permitted to testify, that deceased said to him, that he and Ida McGrew were out in the alley, and were facing the Moseley place, when he heard a noise at the gate, looked over his shoulder, and a pistol fired, and he recognized defendant." Under the State's evidence from Mitchell and Spell (brother of deceased) there was a sufficient predicate laid for the introduction of the dying statement. The attack made on the predicate, through the witness Nagle, would have perhaps excluded it, had that been the only testimony in regard to the predicate. The court submitted this question to the jury, under appropriate instructions. We believe there was no error in this matter. The jury had the right to pass on the question, and the instructions were appropriate. Sims v. State, 36 Texas Crim. Rep., 154; Martinez v. State, 56 S. W. Rep., 58; Highsmith v. State, 41 Texas Crim. Rep., 32. If the testimony of Spell (brother of deceased) and Mitchell was believed by the jury, then a proper predicate was laid.

Appellant offered to prove by another witness, the following: "I asked deceased how he knew who shot him? He stated repeatedly that he recognized him by the flash of the pistol." A bill is reserved to the rejection of this testimony, and it shows that deceased and Ida McGrew had just left her little house in the yard near the Moseley residence, and she had squatted down by deceased, who was standing up, and who had leaned towards her, and just at this juncture the pistol fired immediately behind deceased. The woman testified that the night was dark, and she did not see or recognize the person who fired the shot. The bill further recites that the dying declaration of deceased was then admitted, to the effect, that as the pistol fired he looked over his shoulder, and saw and recognized defendant as the person who fired it, and that defendant was standing at or near the gate opening from Mrs. Kestler's into the alley. Defendant then proved by witnesses Buchanan and Barron, that they had 'recently made experiments in discharging pistols on a dark night, under conditions similar to those testified to by the State's witnesses as shown above, and that it was impossible to recognize the person firing by the flash of the pistol.' The State then proved by Moseley and his wife, that they were at home on the night of the homicide; heard the pistol shot; that there was a lighted lamp at the time on their table. That a few nights ago they had assisted at an experiment reproducing the situation, by placing a lighted lamp on their table, in the position of the lamp on the night of the homicide, and said light cast a beam to the gate from Mrs. Moseley's into the alley, and that they recognized a person standing at the gate." This was the gate where defendant is supposed to have stood when he fired the fatal shot. Defendant then offered Dr. Emory, who stated

that he was called to see deceased about 7 o'clock on the night of December 7, 1904, dressed his wound, and talked with him about the shooting, a short time after he had made a statement to his brother, Cole Spell. Defendant then offered the testimony, which was rejected on exception by the State. The bill is signed with this qualification: "That this evidence was offered by defendant. Defendant's attorneys stated that they would object to the State's attorneys cross-examining witness on any other part of deceased's dying declaration." Where dying declarations are admissible in evidence other statements of deceased contradictory of the dying statements are usually admissible; that is, if they tend to impeach or contradict or depreciate the value of the dying declaration. Felder v. State, 23 Texas Crim. App., 477; Orange v. State, 47 Texas Crim. Rep., 337; 11 Texas Ct. Rep., 512. It will be noted in this connection, that the deceased did not make any statement as to how or by what sort of a light he recognized appellant. He simply stated that he looked over his shoulder and recognized him. We do not believe this testimony was admissible for the purpose of impeaching the dying declaration. The evidence shows that the light was shining from the window of Moseley's residence on the gate where appellant is supposed to have stood when he fired the shot. If deceased had stated that he recognized him by the light from the window, this testimony perhaps would have been admissible; but, as he did not, the excluded testimony served in no manner to impeach. It may be stated further that the testimony shows that deceased stated in that connection that he was almost close enough to have touched him with his hand at the time the pistol fired.

Witness Nalle having testified that he saw defendant on the night of the homicide, and near the time it occurred, was asked whether or not defendant appeared to be laboring under excitement or whether his manner and conduct was natural. The answer was that he appeared to be perfectly natural, that he noticed no evidence in his conduct of any excitement whatever. On cross-examination, the State having repeated said statements of the witness, propounded to him the following question: "Now is it not a fact that the defendant is an old poker player and not easily excited?" Exception was interposed by appellant and it was sustained. Appellant reserved a bill of exceptions to the asking of the question. There was no testimony before the jury on the question. There is no merit in this bill.

Another bill of exceptions is reserved to the action of the court refusing to set aside the verdict, because a juror, W. P. Burkhalter, was not a fair and impartial juror, and filed in support of that, the affidavits of T. H. and George Royder, who depose and state that on or about the 12th of March, 1905, the juror mentioned, George Royder and J. P. Royder, were talking and discussing the killing of Henry Spell, and the juror stated that any man who would write such letters as William McCorquodale did, to a negro woman, ought

to have his damn neck broken or be hung. This was before the juror was taken. Counsel for appellant state, that neither they nor either of them had any reason to suppose that the juror was not a fair and impartial juror; that neither they nor either of them knew or had reason to suspect he was prejudiced against appellant, or that he had expressed the opinion set out in the affidavit of the Royders; and that the juror qualified on his voir dire, and that they did not know or learn of the conduct of the juror until after the trial of the case, nor of his prejudice against appellant, and that at the time he took the juror, appellant's challenges had not been exhausted, and if they had known the facts, they would have challenged him.

Burkhalter filed an affidavit to the effect, that he had no recollection of using any such language, either in form or import; but he could not say that he did not use the language, but if he did, it was an idle and unmeaning remark, and not seriously made; that he had not seen any of the letters referred to, and had not read or heard what they contained, and knew nothing of the facts in the case. That he had talked to none of the witnesses and had formed no opinion prior to the trial as to the guilt or innocence of the appellant, and was in no way biased or prejudiced, etc. All of the jurors file affidavits in regard to the matter, and they show that Burkhalter was the only juror who was favorable to appellant in their retirement, and that he held out in his favor for sometime, until after a full discussion of the evidence when he finally consented and agreed to the verdict rendered. Burkhalter himself testified that he was favorable to appellant and hung the jury on the question as to whether the dying declaration should be considered; that with that in the case, that appellant ought to be convicted, but he had doubt in his mind as to whether it should be considered by the jury. In this he is sustained by all of the jury. It is further in evidence by the sheriff, district clerk and another witness, that this juror was absent, and had not been served, but appellant's counsel insisted that he should be brought into court, and attachment was issued for him and he was brought into court and accepted as a juror. None of these parties show that while the juror was being examined, was he interrogated as to whether or not he had formed any conclusion as to the guilt or innocence of the defendant, or that he had any bias in favor of or against him. The statement is simply, that the parties were not aware that he had so expressed himself. It is well settled by a long line of decisions in this State, that where a juror is accepted in this manner, it is too late after the trial to investigate this cause of challenge. If the bill of exceptions or the facts developed on the motion for new trial had shown that they had investigated this matter and he had misled counsel or the appellant in regard to it, we would have a different question presented. It is further shown by his affidavit that if he had expressed himself so at all, which he did not recollect, it was a careless and meaningless remark. In this

condition of the record, we do not believe the court erred in overruling the motion for new trial.

It is contended that the charge on murder in the second degree is wrong. That portion of it is as follows: "If you believe from the evidence beyond a reasonable doubt that defendant upon his malice aforethought, with a deadly weapon or instrument reasonably calculated to and likely to produce death by the mode and manner of its use, in a sudden transport of passion, aroused without adequate cause, and not in defense of himself against an unlawful attack, reasonably producing a rational fear or expectation of death or serious bodily injury, with intent to kill, did shoot with a gun, and thereby kill Henry Spell, as charged in the indictment, you will find him guilty of murder in the second degree." The objections are that it is a collection of abstract legal phraseology, inapplicable to the facts, finding no support in the evidence, and depriving him wholly of the benefit of an instruction on murder in the first degree; puts a greater burden upon him than the law authorizes, and requested the jury to find, before they could be authorized to convict of murder in the second degree, that defendant was in a sudden transport of passion, aroused without an adequate cause, there being no evidence as to the condition of the defendant's mind, aroused by any sudden passion arising from any cause adequate or inadequate, and also required the jury to find that the killing was not in self-defense, there being no evidence of self-defense, etc. We are of opinion that the charge is favorable to appellant. In fact we very seriously doubt if the evidence suggesting the theory of murder in the second degree is in the case. If appellant did the killing, it was upon former grudges, and for revenge on account of being supplanted in the affections of the negress, Ida McGrew. He went to the place where they were together at night, and shot deceased in the back. If he did the killing; and it was done on this account, murder in the second degree would be excluded. If he found deceased with the woman, not expecting to meet him at that point, and he killed him because of that fact, with the former grudges out of his mind as well as his antecedent malice towards him, then it would have been upon a sudden impulse. Whether or not this peculiar expression, "sudden transport of passion" would be technically correct or incorrect we do not deem it necessary to discuss, but under this record, we do not believe this could have possibly injured appellant, even if it was error. The court charged fully upon murder in the first degree, murder in the second degree, and then gave the reasonable doubt between the two degrees. There was no adequate cause in the record. Therefore, the question of manslaughter could not have been considered by the jury, from any standpoint, and if there was any passion at all, it was from an inadequate cause; and if it was upon a sudden meeting, in view of all this record, to have

charged the jury that it was upon a sudden transport of passion, would not be of sufficient moment, if wrong, to require a reversal. This is recognized by appellant's next exception to the charge, in which he contends that the court erred in not charging the jury that, if appellant went to the house of Ida McGrew, without any intention of killing the deceased, Henry Spell, and while there he saw deceased and the woman together, and from any cause not deemed adequate, killed to reduce the offense to manslaughter; or there was prejudice in the mind of defendant, a sudden transport of passion, anger, rage, or terror, rendering the mind incapable of cool reflection, and while in that condition of mind, he formed the intent to kill, and did shoot and kill Henry Spell, he would be guilty of murder in the second degree. While this charge is based upon a remote and rather speculative condition, in our opinion, it was sufficiently given in the charge complained of by appellant, just discussed. For if murder in the second degree could be based upon any fact in this record, it would have been upon the fact that defendant came suddenly upon deceased with the woman. There was no possible contingency in this record that would have authorized a charge upon murder in the second degree, except that one fact. We are of opinion that the charge as given in this respect is sufficient, and there was no error in not giving the charge of which appellant complains.

The court's charge is also criticised for failing to submit the issue of manslaughter. There is not a fact in the case calling for it. Believing there is not sufficient error in the record authorizing a reversal, the judgment is affirmed.

*Affirmed.*

[Motion of appellant for rehearing overruled without written opinion.—Reporter.]

### ON REHEARING.

#### November 21, 1906.

HENDERSON, JUDGE.—This case was affirmed at the Tyler Term, 1905, motion for rehearing was filed, and the case was carried to the Dallas Term, 1906, where the motion was overruled. Subsequent to the overruling of appellant's motion, the State filed a motion requesting this court to recall the transcript from the Tyler Branch, where it had been forwarded for the purpose of issuing the mandate, and to correct the judgment of the lower court. This motion is in this form: "Now comes the State, by the Assistant Attorney-General, and would show the court, that the judgment in this cause was affirmed at Tyler, and the appellant's motion for rehearing was overruled at the Dallas Term; that since which time it has been discovered, and this court's attention is now called to the fact that the transcript does not contain a complete judgment against appellant, though the sentence is contained in the

transcript. Wherefore, the State prays that the court order the transcript and all papers transferred from Tyler, to the Austin Branch of the court, to the end that this court may determine its jurisdiction of this appeal, and whether or not the judgment should be reformed and affirmed, or whatever action this court deems necessary."

On said motion the transcript was recalled and the mandate ordered to be withheld pending the determination of the State's motion.

It appears from the transcript that the judgment of the District Court is in the following form:

"The State of Texas
"No. 4283      vs.
"William McCorquodale.

"March 27, 1905.

"This day this cause was called for trial, and the State appeared by her district attorney, and the defendant, William McCorquodale, appeared in person, his counsel also being present, and the said defendant, William McCorquodale, having been duly arraigned, and both  parties announced ready for trial, and the defendant, William McCorquodale, in open court pleaded not guilty to the charge contained in the indictment herein; thereupon a jury, to wit: J. H. White and eleven others, were duly selected, empaneled and sworn, who, having heard the indictment read, and the defendant's plea of not guilty thereto, and having heard the evidence submitted, and having been duly charged by the court, retired in charge of the proper officer to consider of their verdict, and afterwards, on April 1st, were brought into open court by the proper officer, the defendant and his counsel being present, and in due form of law returned into open court, the following verdict:

" 'We, the jury, find the defendant guilty of murder in the first degree, and assess his punishment at confinement in the State Penitentiary for life.            J. H. White, Foreman.' "

The judgment is in the ordinary form and is complete so far as it  goes, except the 9th and 10th requirements, under article 831 Code Criminal Procedure are omitted. Subdivision 9 provides: "In the case of a conviction that it is considered by the court that the defendant is adjudged to be guilty of the offense as found by the jury; or, in case of acquittal, that the defendant be discharged. 10. That the defendant be punished as has been determined by the jury in cases where they have the right to determine the amount or the duration and the place of punishment, in accordance with the nature and terms of the punishment prescribed in the verdict."

The object of the motion on the part of the State it will be seen is to have this court reform and correct the judgment. Appellant contests this on two grounds: First, that this court has

lost jurisdiction of the case: the motion for rehearing on the part of the defendant having been overruled, and the State's motion not being in the nature of a motion for rehearing. Second, that it is not competent, even if this court had jurisdiction of the case, to reform and correct the judgment of the lower court in the respects pointed out.

With respect to the first proposition, we hold, that this court has plenary power over its judgments during the term, and even after the term, and although a motion for rehearing may have been overruled, in order to support its jurisdiction, and to ascertain such matters of facts as may be necessary in order to exercise its jurisdiction. Bailey v. State, 11 Texas Crim. App., 140; Craddock v. State, 15 Texas Crim. App., 641. In Bailey's case, supra, motion for rehearing was filed after the expiration of the fifteen days allowed by law (art. 1030 Rev. Stat.) for the filing of such motions. The court there, in passing on the question, say: "The powers of this court are not so restricted as to prevent the court from correcting clerical errors, mistakes or defects of form, or making additions of matters which may be necessary to carry out the judgment of the court. Nor does the statute place such a restraint upon the powers of this court as to prevent the court from declaring null and void the judgment rendered in a case not legally before this court." In support of this proposition, the court cites Burr v. Lewis, 6 Texas, 76. In Craddock's case, supra, some misdemeanor cases had been dismissed on the alleged ground that no sufficient recognizances had been filed in said cases. It there appeared that the records in said cases in the lower court had been lost or destroyed, and that the State, without notice to appellant, substituted some of said lost papers, and among others, substituted the recognizances, which substitutions showed they were defective recognizances. These substituted recognizances were brought to this court, and the appeals dismissed thereon. Subsequently, on the affidavit of appellant, the matter of the substitution of these recognizances was brought to the court's attention, and that the same were substituted without notice; and it was further shown that the recognizances really executed in said cases were proper legal recognizances; and that the attempted substitution was a fraud upon the rights of appellant. The court, Judge Winkler rendering the opinion, makes reference to the powers of this court to ascertain and maintain its jurisdiction by affidavit or otherwise, as provided by article 5 section 6 of the Constitution. The court' there also refers to Burr v. Lewis, and Chambers v. Hodges, 3 Texas, 517. The court quotes approvingly from the latter case, as follows: "The principle that the application for the rehearing upon the merits can not be heard after the term, does not apply where the judgment is sought to be set aside, as in this case, upon the ground that the judgment was not a legal judgment, when rendered for

want of jurisdiction. If the judgment when rendered was void, it could not conclude the right of any party. But if the case was not legally before us at the last term, when the judgment was rendered, it is immaterial at what term the application was made, for if the judgment was a nullity, it may be so declared upon a motion made at a subsequent term." The court in that case, though after the term, entertained jurisdiction and recalled the mandates, and authorized the cases to be set down at the next ensuing term.

From these cases it will be seen that this court has heretofore fully recognized its power to inquire into and maintain its jurisdiction, and will take all proper steps to determine and enforce that jurisdiction. We apprehend, if this was an omission of something in the judgment, as the wrong number of years which may have been adjudicated against defendant, to his injury, there could be no question but that the court would entertain the jurisdiction to recall the mandate, and either correct the judgment here, or if it was found that this could not be done, to send the case before the proper tribunal, for the proper entry or correction. We do not believe that there can be any question as to the authority of this court under the circumstances shown in this case, to entertain the State's motion, and order the clerk to withhold the issuance of the mandate and return all of the papers, and have the same reentered on the docket, for such proceedings as may be proper.

The second proposition relates to the power of this court to correct and reform the judgment, by adding thereto, the omitted clauses. It appears to be conceded by the appellant that the lower court might correct and reform this judgment by adding thereto the omitted clauses, but that this court has no power to do so; that all it can do is to reverse and remand the case, because there is no final judgment in the case, and that the lower court might reform and correct the same, after it had been so remanded. That is, we understand it to be agreed, under the authorities, that if there had been an attempt on the part of the clerk below to insert the omitted clauses in the judgment, but these had been erroneously inserted, as to the offense or as to the number of years appellant was to be confined, that this court might correct the same under article 904 Code Criminal Procedure, which among other things, authorizes this court to "reform and correct the judgment, as the law and the nature of the case may require." The contention being that "reform and correct" appertains to something erroneously done, but does not refer to an entire omission to do a thing. Small v. State, 38 S. W. Rep., 798; Bullard v. State, 50 S. W. Rep., 348; Burks v. State, 55 S. W. Rep., 824; Turner v. State, 44 Texas Crim. Rep., 69.

We do not agree to this narrow construction of said article. In Small's case, supra, the question of the amendment of the sentence under said article was before this court, and it was there held by

a majority of the court (Judge Davidson, dissenting) that the sentence of the prisoner in a felony case was more than a mere formal matter; that appellant was required to be present, and the sentence authorized by law passed on him; and that it would not be presumed that the record, being the final judgment of the court, spoke an untruth; and that the case should be reversed in order that the prisoner might be resentenced, for the offense of which he had been convicted. Reaching the conclusion it did, the case of Peterson v. State, 25 Texas Crim. App., 70, and Ex parte Strey, 28 S. W. Rep., 811, were in effect overruled. This case appears to have been followed by Barfield v. State, 41 S. W. Rep., 610; Womble v. State, 43 S. W. Rep., 114; Longoria v. State, 44 S. W. Rep., 1089. In Longoria's case, the exact question presented here was before the court. The power to reform in said case does not appear to have been called to the attention of the court. The case was simply dismissed because it did not contain a final judgment. In Bullard's case, supra, appellant was convicted of the theft of a horse, and his punishment assessed at seven years in the penitentiary; the judgment was entered accordingly; in the sentence (which was embraced in the record and sent to this court) his term of punishment was made to begin at the termination of the judgment and sentence in another case against him. It appeared to this court that there was no testimony authorizing the cumulation of his sentence based on another conviction. Under the authority of article 904, the judgment of the lower court was corrected and his sentence made to commence at once. That case was differentiated from Small v. State, supra.

In Burk's case, 55 S. W. Rep., 824, appellant was indicted for passing as true a forged instrument in writing. The verdict of the jury found appellant guilty as charged in the indictment and assessed his punishment at confinement in the penitentiary for a term of two years. The judgment of the court contained the following recital: "It is, therefore, considered and adjudged by the court that the defendant Ben Burks is guilty of the offense of forgery as found by the jury, and that he be punished as has been determined by the jury by confinement in the penitentiary for a term of two years." Here, inasmuch as the indictment charged appellant with uttering a forged instrument, he could not be convicted of forgery, and the judgment finding him guilty of that offense was reformed and corrected so as to make it correspond with the indictment; that is, he was adjudged guilty of uttering a forged instrument. This was on the ground that it was a clerical mistake, and that there was enough in the record to make the correction. From that decision the writer dissented, holding with the Small case, supra.

In Turner's case, supra, the question again came before this court on motion for rehearing. It was there held (all of the judges

present and concurring) that the judgment could be reformed in accordance with the holding of this court in Burks and Bullard cases, supra. It will be seen from these latter cases that the former views of this court, as announced in Small's case, and those following it, have been overruled, and this court has returned to the former rule on the subject. McDonald v. State, 14 Texas Crim. App., 505; Reyna v. State, 26 Texas Crim. App., 666; O'Bryan v. State, 27 Texas Crim. App., 339.

However, the contention is, that none of our decisions go to the extent, under the authority of this court, to reform and correct the judgment, and to enter some omitted clauses as are left off from this judgment. Indeed, it is said that Longoria v. State, is direct authority against this view. Longoria's case followed Small's case, and was rendered before the overruling of that line of cases. While the decision is exactly in point, the question of the power of the court to reform and correct the judgment was not brought before the court.

It will be seen from an inspection of the record, that the sentence of the lower court, which is the final act or judgment of the court, is in proper form. Article 832 Code Criminal Procedure, and authorities cited thereunder in White's Ann. Code Criminal Procedure. This, as has been held, is the final judgment without which an appeal will not be entertained. It will be readily conceded that the lower court, under article 837 Code Criminal Procedure could complete the entry of this judgment. But it is insisted that this court is powerless to make the correction, and the case should be sent back in order that it be corrected in the court below. We have exactly the same data here for the correction of said judgment that the court a quo would have, were it sent there. It occurs to us, that the language used in our statute, "reform and correct" has more force than if the statute contained the power merely to "correct." Evidently the Legislature used the word "reform" in addition to that of "correct" for some purpose, and it has a larger signification. "Reform" means to correct; to make anew; to rectify. Rapalje Law Dic., p. 1083. Here we have all of the foundation of the judgment, including the verdict of the jury, which is the basic rock on which the judgment is formulated. We have following this, the final judgment of the court, which is the sentence. This itself adjudicates the guilt of appellant and sentences him, in accordance with the verdict and judgment. From this data, certainly we can do that which the court a quo in due order should have done. We accordingly hold that the judgment of the court below should be reformed, and corrected, so as to make it read, in connection with the judgment as entered, and following the verdict, as follows, to wit:

"It is therefore considered, ordered and adjudged by the court that the defendant, William McCorquodale, is guilty of the offense of murder in the first degree, as found by the jury, and that he,

the said William McCorquodale, be punished as has been determined
by the jury by imprisonment for life in the penitentiary; and it
is further ordered, adjudged and decreed by the court that the
State of Texas do have and recover of and from the defendant,
William McCorquodale, all costs of this prosecution, for which
execution may issue; and that the said defendant is now remanded
to jail to remain in custody to await the further order of the court."

The State's motion to reform is accordingly granted; the judg-
ment is reformed and corrected, as above indicated, and as reformed
and corrected, the judgment is affirmed in accordance with the
previous opinion of this court.

*Reformed and affirmed.*

[Dismissed for want of jurisdiction in U. S. Supreme Court,
December, 1908.—Reporter.]

DAVIDSON, PRESIDING JUDGE (dissenting).—I respectfully enter
my dissent from the conclusion of my brethren in regard to re-
forming and correcting the judgment of the trial court. The record
discloses that there is not a final judgment and the transcript of
the judgment closes with entering the verdict of the jury. This
matter was overlooked in the disposition of the case both upon the
original hearing and on motion for rehearing, and was called to
our attention subsequently by a motion on the part of the State
to reform and correct the judgment. By virtue of the terms of
article 904 Code Criminal Procedure this court could reform and
correct judgments, and such has been the law in Texas since the
adoption of the original Penal Code and Code of Criminal Pro-
cedure. Our decisions are numerous to the effect that this court
may under proper condition of the record reform and correct the
judgment. But I am not aware of any case decided by this court
or the Supreme Court, before the creation of the Court of Appeals,
under the Constitution of 1876, that ever undertook or held that
the Appellate Court had authority to make or enter a final judg-
ment on appeal. It is the unvaried holding that article 904 only
applies and can be called into practice when there has been a com-
plete judgment entered in the trial court, but one which is not
in accord with the verdict of the jury. In the case in hand there
was no final judgment entered, and therefore there was nothing to
reform or correct. Article 831 Code Criminal Procedure provides:
"(7) The return of the verdict. (8) The verdict. (9) In case of
a conviction that it is considered by the court that the defendant
is adjudged to be guilty of the offense as found by the jury, but
in case of an acquittal that the defendant be discharged. (10) That
the defendant be punished as has been determined by the jury
in case where they have the right to determine the amount or the
duration and place of punishment in accordance with the nature
and terms of the punishment prescribed in the verdict."

Subdivisions 9 and 10, above quoted, are not incorporated in the record, and were not entered in the judgment in the trial court; nor does the transcript contain such in the final judgment. It has been determined that the right of appeal exists only after the judgment of final conviction has been rendered and entered against defendant; and that there is no appeal until a judgment has been rendered and entered adjudging defendant guilty of an offense. Washington v. State, 31 Texas Crim. Rep., 84; Darnell v. State, 24 Texas Crim. App., 6; Pate v. State, 21 Texas Crim. App., 191. The judgment of conviction rendered may be conceded to consist of two parts; first, the facts judicially ascertained, together with the manner of ascertaining them of record. Second, the recorded declaration of the court pronouncing the legal consequences of the facts thus judicially ascertained. Both of these are necessary in the rendition of a judgment of conviction. Mayfield v. State, 40 Texas, 289; Pennington v. State, 11 Texas Crim. App., 281. The requisites prescribed by article 831 of the final judgment in a felony case must be complied with, in order to constitute a final judgment. Mirelles v. State, 13 Texas Crim. App., 346; Labbaite v. State, 4 Texas Crim. App., 169; Butler v. State, 1 Texas Crim. App., 638; Roberts v. State, 3 Texas Crim. App., 47; Young v. State, 1 Texas Crim. App., 64; Calvin v. State, 23 Texas, 577; Burrell v. State, 16 Texas, 147; Shultz v. State, 13 Texas, 401. With reference to subdivision 9 of article 831, the judgment must show that it is considered by the court that the defendant is adjudged to be guilty of the offense as found by the jury. But in case of an acquittal he should be discharged. Keller v. State, 4 Texas Crim. App., 527; Mirelles v. State, 13 Texas Crim. App., 346; Gaither v. State, 21 Texas Crim. App., 527; Reyna v. State, 26 Texas Crim. App., 666; Longoria v. State, 44 S. W. Rep., 1089. Subdivision 10 of the same article requires that the final judgment from which an appeal can be prosecuted must show that the accused was condemned to be punished as determined by the jury, setting forth the amount of the punishment, etc., as found in the verdict. Anschincks v. State, 43 Texas, 587; Longoria v. State, 44 S. W. Rep., 1089; Choate v. State, 2 Texas Crim. App., 302.

There is an unbroken line of authority in this State, holding that the Appellate Court can not acquire jurisdiction on appeal of a criminal case, unless final judgment has been rendered in the court below. This was the settled law before the Penal Code and Code of Criminal Procedure were approved originally. And of course it has been the law since by express enactment of the statute. Longoria v. State, 44 S. W. Rep., 1089; Darnell v. State, 24 Texas Crim. App., 6; Mirelles v. State, 13 Texas Crim. App., 346; Pennington v. State, 11 Texas Crim. App., 281; Labbaite v. State, 4 Texas Crim. App., 169; Roberts v. State, 3 Texas Crim. App., 47; Butler v. State, 2 Texas Crim. App., 529; Trimble v.

State, 2 Texas Crim. App., 303; Choate v. State, 2 Texas Crim. App., 302; Butler v. State, 1 Texas Crim. App., 638; Smith v. State, 1 Texas Crim. App., 516; Smith v. State, 1 Texas Crim. App., 408; Young v. State, 1 Texas Crim. App., 64; Anschincks v. State, 43 Texas, 587; Mayfield v. State, 40 Texas, 289; Nathan v. State, 28 Texas, 326; Calvin v. State, 23 Texas, 577; Burrell v. State, 16 Texas, 147; Shannon v. State, 7 Texas, 492; Republic v. Loughlin, Dallam, 412; Nash v. Republic, Dallam, 631. And for other authorities see White's Ann. Code Crim. Proc., sec. 43.

This court has always recognized the proposition as correct that until the final judgment as provided in article 831 has been entered in the trial court the jurisdiction of this court can not attach; and invariably, until this case, all such appeals have been dismissed for want of a final judgment. The practice of this court in its construction of article 904, Code Criminal Procedure, has been equally certain that this court has the power to reform and correct the judgment and sentence, when the judgment has been entered and sentence pronounced in trial court. There has been some fluctuation in regard to how far the court would go in reforming such judgment and sentence, but there is not, among all the cases under either article 831 or 904, supra, a decision rendered until this, where this court has supplied a final judgment under article 831, or a sentence under 904. It has been the universal practice to dismiss the appeal from this court when article 831 has not been complied with. So far as the judgment is concerned, as found in the transcript of this record, and as cited directly in point here, are Young v. State, 1 Texas Crim. App., 64; Choate v. State, 2 Texas Crim. App., 302; Trimble v. State, 2 Texas Crim. App., 303; Longoria v. State, 44 S. W. Rep., 1089, and other cases cited, supra. The judgments in those cases were practically as in this case.

I might readily concur with my brethren, if article 831 had been complied with and the final judgment entered in the trial court, and the sentence had followed, so that the jurisdiction of this court had attached, that this court might reform and correct the judgment, however erroneously entered; to conform to the verdict rendered by the jury. This is as far as this court has ever gone in reforming and correcting judgments. This case, however, is different, and in which authority is assumed to render a final judgment that the trial court did not.

That the position I have assumed is correct, I think the terms of article 837 Code Criminal Procedure demonstrate, for it is there provided: "Where from any case whatever there is a failure to enter judgment and pronounce sentence upon conviction, during the term, the judgment may be entered and the sentence pronounced at any succeeding term of the court, unless a new trial has been granted, or the judgment arrested or an appeal has been taken." Following this, this court has universally dismissed the appeal

for want of a final judgment, where any of the requisites provided by article 831 have been omitted, so that the trial court could enter its judgment at a subsequent term of court. If this court could enter a final judgment, omitted by the trial court, then article 837 would be unnecessary and more than useless. This article, taken in connection with articles 831, 834 and 904, it occurs to me demonstrates the error into which my brethren have fallen. Following this unbroken line of decisions and the articles of the Code Criminal Procedure, I am clearly convinced that the jurisdiction of this court had not attached, for want of a final judgment. Therefore, there was no authority invested in this court to reform and correct the judgment. To restate, before this court can reform or correct a judgment, its jurisdiction must attach. A final judgment under article 831 is a prerequisite to the attaching of the jurisdiction of this court. I therefore respectfully dissent, and believe that this appeal should be dismissed, in order that the court below may enter its final judgment. I further believe that this court has no authority to enter a final judgment under article 831, inasmuch as its jurisdiction had not attached to this appeal.