## Bubber Robinson v. The State.

### No. 290. Decided March 23, 1910.

**1.—Murder—Continuance—Bill of Exceptions.**

Where, upon appeal from a conviction of murder, no bill of exceptions appeared in the record reserving the objection to the court's action in overruling an application for a continuance, the same could not be considered; besides it appeared from the record that the testimony of the absent witness was immaterial.

**2.—Same—Representation by Counsel—Motion for New Trial.**

Where, upon appeal from a conviction of murder, the motion for new trial was not sworn to, and there was nothing in the record to show whether defendant was forced to trial without the necessary preparations for his defense by himself and counsel, there was no error.

**3.—Same—Sufficiency of the Evidence—Death Penalty.**

Where, upon trial for murder, the State's witness, who was an accomplice,

was not only corroborated by other testimony showing that the defendant fired the fatal shot, but the defendant admitted his guilt while in jail, to which statement the defendant did not object on the trial, and the evidence showed that the homicide was committed by the defendant in an attempted robbery, a verdict assessing the death penalty will not be disturbed.

**4.—Same—Misconduct of Jury—Separation of Jury.**

Where, upon trial of murder, the defendant complained in his motion for new trial of the separation of the jury during the trial of the case, and there was no evidence on the trial of this issue, that during the incidental separation of the jury there was any circumstance, or even a suspicion that such separation could have affected the verdict, or thrown a shadow upon the impartiality and fairness of the trial, there was no error. Following Ogle v. State, 16 Texas Crim. App., 361, and other cases.

**5.—Same—Fair and Impartial Trial—Murder in First Degree.**

Where, upon conviction of murder in the first degree assessing the death penalty, there was nothing in the record which suggested that there was anything unfair or partial in the trial of the case, and that the defendant was tried under due form of law, the judgment must be affirmed.

**6.—Same—Reforming and Correcting Judgment—Statutes Construed.**

Under article 904, Code Crim. Procedure, the Court of Criminal Appeals may reform and correct the judgment below as the law in the nature of the case may require; and where the judgment below, on a trial of murder, failed to show that any evidence was submitted, that the jury was charged by the court or that the verdict of the jury was returned into open court, the Court of Criminal Appeals is authorized—these matters all appearing of record—to add these requisites to the judgment so as to make it complete as required by article 831, Code Crim. Procedure, and it is not necessary to refer this matter to the trial court under article 837, Code Criminal Procedure, to reform such judgment at a succeeding term of said court. Following McCorquodale v. State, 54 Texas Crim. Rep., 344.

**7.—Same—Form of Judgment as Corrected on Appeal.**

See opinion for form of judgment as corrected and reformed in the Court of Criminal Appeals.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. Robert B. Seay.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*Wiley & Baskett,* for appellant.—The Code of Criminal Procedure, article 831, defines a "judgment" and what it shall contain. The foregoing matters are requisites as contained in said definition. It has been held in this State, in the cases cited below, that a judgment consists of two parts (1), the facts judicially ascertained, together with the manner of ascertaining them, entered of record; (2) the recorded declaration of the court pronouncing the legal consequences of the facts thus judicially ascertained. Both of these parts are equally essential. See Mayfield v. State, 40 Texas, 289. See also the following cases following the Mayfield case, to wit: Butler v. State, 1 Texas Crim. App., 638; Young v. State, 1 Texas Crim. App., 64; Trimble v. State, 2 Texas Crim. App., 303; Choate v. State, 2 Texas Crim. App., 302; Anschincks v. State, 43 Texas, 587; Calvin v. State, 23 Texas, 577; Shultz v. State, 13 Texas, 401; Labbaite v. State, 4 Texas Crim.

App., 169; Keeller v. State, 4 Texas Crim. App., 527; Pennington v. State, 11 Texas Crim. App., 281; Ellis v. State, 10 Texas Crim. App., 324; Gaither v. State, 21 Texas Crim. App., 527, 1 S. W. Rep., 456.

We are aware that article 904 of the Code of Criminal Procedure, as amended by the Acts of 1897, says, "The Court of Criminal Appeals may affirm the judgment of the court below or may reverse and remand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment as the law and the nature of the case may require, but in all cases the court shall presume that the venue was proven in the court below; that the jury was properly empaneled and sworn; that the defendant was arraigned; that he pleaded to the indictment; that the charge of the court was certified by the judge and filed by the clerk of the court before it was read to the jury, unless such matters were made an issue in the court below," etc.

While the presumption may be against us as to the matters set forth in said statute, it can not be presumed against the defendant or appellant as to the other matters omitted from, or not recited in the judgment, that is (3), that any evidence was submitted; (4) that the jury was charged by the court, or (5) that the verdict was returned into open court.

Before the said amendment of 1897 was passed this court had consistently held that a failure of the judgment to recite the plea of the defendant would necessitate a reversal of the judgment. See Wood v. State, 37 Texas Crim. Rep., 89, 38 S. W., 623; Click v. State, 39 S. W., 370; Gilmore v. State, 37 Texas Crim. Rep., 178. Judgment failing to show selection of the jury would also be reversed. Yates v. State, 37 Texas Crim. Rep., 347, 39 S. W. Rep., 933. All the requirements of article 831, Code of Criminal Procedure, seem to be of equal dignity. If before the amendment of 1897 to article 904 it was reversible error to omit those parts or sections, it must of necessity now be a reversible error to omit from the judgment the recitals required by said article 831 that have not been affected by the amendment to article 904 in 1897. Now, before 1897 this very point herein involved, as far as the introduction of evidence is concerned, was directly passed upon in the case of Creswell v. State, on rehearing, reported in the 37 Texas Crim. Rep., 335, 39 S. W. Rep., 935. In that case Judge Hurt says: "On motion for rehearing our attention has been called to a defect in the judgment. The judgment fails to show that the evidence was introduced on the trial. The requisites of a final judgment are shown by article 831, Code Crim. Proc., which provides: 'A final judgment is the declaration of the court entered of record, showing,' among other things '(5), the submission of the evidence. . . .' This article requires the judgment should show that evidence was introduced. For this error the judgment is reversed and the cause is remanded."

In the case of Oliver v. State, 40 S. W. Rep., 273, Judge Henderson, rendering the opinion, affirms the Creswell case. That opinion in that

case uses the following language: "The record also fails to show the following essential portions of the judgment: the selection and empaneling of the jury and the submission of the evidence. These are necessary parts of the record. See Creswell v. State, 37 Texas Crim. Rep., 335, 39 S. W. Rep., 935. Because of the errors pointed out the conviction in this case can not be sustained."

We earnestly submit that in this case, on account of the matters in which this judgment is deficient, this judgment should be reversed and the cause remanded.

We further submit that the defects here are not such that can be remedied by a reformation of this judgment, because the term of the court at which it was rendered has ended, and there is no memorandum by which the reformation or amendment or correction can be made. There is nothing from which this court can correct the judgment. It differs materially from the McCorquodale case and the authorities therein cited. On this assignment we ask a reversal.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, JUDGE.—This is an appeal from a conviction of murder in the first degree with the death penalty assessed.

In the village of Rose Hill, Dallas County, Texas, there lived a man by the name of Frank Wolford. On November 11, 1908, he, in company with his stepson, and one of his neighbor's sons, Wesley Anderson, young boys, went to the city of Dallas with a wagon load of onions, his stepson's name being Epps Gohlson. These parties put up at the wagon yard, and on the night of November 11 they were out walking on Main Street, strolling around looking at the sights, when along about 8 or 9 o'clock the deceased and the boys concluded to go back to the wagon yard, and going east on Main Street to where Dove Street intersects the same, three negroes passed them. One of the negroes asked for a match of the deceased, and deceased said he had none. The deceased and the two boys kept on east up Main Street, and when they got to where Duncan Street crosses Main Street they were again accosted by the three negroes who had asked for a match before that. Appellant pulled his gun or pistol and ordered them to throw up their hands. This the deceased and the boys did, and commenced screaming or holloing, and one of the negroes commenced trying to go through the man's pockets, when the deceased made fight and resisted the efforts of the negro to go through his pockets, and pushed the party away. About the third time the party seized him deceased cut him with his knife, and the negro took his handkerchief out and put it up to his ear, and said, "Damn him, he cut me," and appellant said, "Ain't you going to give me what you've got?" The deceased said no, and when he said that appellant fired, and deceased fell, and the two boys ran off a little piece, and appellant in company with the other two negroes ran off. From the wounds received Wolford died, and

appellant in this case some two or three months afterwards was arrested in the city of Washington, D. C., returned to Dallas, tried and convicted and given the death penalty.

The State's witness, Eugene Jones, and Walter West, who were with appellant, and assisted in the robbery, turned State's evidence, and were used by the State as witnesses against appellant upon the trial of this case. It may be stated that Gohlson, the stepson of deceased, and Wesley Anderson, both corroborated the testimony of the accomplice, Eugene Jones, and fully identified the appellant as the party who fired the fatal shot that caused the death of deceased Wolford. There is no question on this appeal made on the sufficiency of the testimony, nor is there any complaint at the charge of the court.

1. Appellant made an application for a continuance for the testimony of a witness by the name of Mary Sidner, who resided in Dallas County, by whom he proposed to prove, and could prove, if she was present, that he, the appellant, on the night of the killing and before the killing left his pistol with the said Mary Sidner, and did not have said pistol at the time of the homicide. No bill of exceptions was reserved to the action of the court in overruling this application for continuance, and it may be said in passing that the motion for a continuance fails to disclose how this testimony could have been material. That he may have left his pistol with the witness on the night of the killing, and never had that pistol, would not go to show that he did not have a pistol at the time of the killing. While we are not permitted to revise the application for a continuance in the absence of a bill of exceptions, in view, however, of the death penalty being assessed in this case, we have made this statement to show that no possible injustice could have been done appellant by overruling the application for a continuance.

2. In the motion for a new trial it is complained that the court should have granted a new trial in order to allow him to procure the testimony of the absent witness, Mary Sidner, as shown by his application for continuance, because he had not had sufficient time to employ counsel to defend him, and that counsel were appointed to represent him, and they had not had sufficient time to acquaint themselves with the defense. There is nothing in the record to show whether this ground of the motion for a new trial is true or not. There is no bill of exceptions in the record, and this court can not revise the action of the court below upon this question. The motion for new trial is not sworn to, hence this court can not say that appellant was forced to trial without the necessary preparations for a trial of this importance and magnitude.

3. The fourth ground of the motion for a new trial complains that the verdict is contrary to the law and the evidence. To our minds the evidence is amply sufficient to sustain a conviction. In fact, there is not a suggestion in the record that appellant was not the party who fired the fatal shot on the night in question. The two boys with de-

ceased fully identified him as the party who fired the shot, and fully
corroborated the accomplice Jones on this point. We also find in the
record and in the statement of facts that the witness Brandenburg tes-
tified that appellant in this case "made a statement while we were at
the jail; the county attorney has that original statement; he admitted
he was there in that statement." This testimony was not objected to
in the trial of the case. The accomplice Jones testified that at the
time that appellant shot and killed deceased Wolford, that Walter West,
or "Shine," as he was commonly called, was trying to go through the
pockets of deceased when deceased drew his knife and cut the said
Walter West, or Shine, on the neck, or close to his left ear. When
Walter West was arrested he was found to have this cut on his left ear,
and also his coat was cut. Adam Guinn testified that he was in the
saloon business, and that between four and five o'clock of November
11, the day of the killing, he saw close to his place of business, and
in front of his saloon, which was situated at 817 Elm Street, the appel-
lant, Bubber Robinson, Genie Jones and Walter West in company
together. The witness had some words with Genie Jones at the res-
taurant, and when Genie Jones walked out of the restaurant all three
of the parties walked down the street together, going east. When
we take into consideration the testimony of the accomplice that the
three parties were together on the night of the killing and attempted
robbery, that in the killing one of these three men was cut, that the
three men were seen together about five o'clock on the evening of
that day, that the appellant fled and was caught in Washington,
D. C., that the two little boys who were with deceased at the time
identified Bubber Robinson as the man who fired the shot, we are
inclined to hold that the guilt of the appellant was established beyond
doubt, and if he was guilty, and the testimony of the witnesses was
true, the jury having passed upon that, this court would not be justified
in disturbing the verdict on this ground; and that if there was any
error committed in this case the wrong must fall upon the witnesses
who testified, and not upon the verdict of the jury or the action of the
lower court.

4. We find in the record one bill of exceptions. It seems that
during the trial of the case, and while the State was introducing its
testimony, after two or three witnesses had testified, the court took a
recess for some ten minutes. The jury repaired to the toilet room in
charge of an officer. The toilet room was situated across the court-
room, and some twenty-five or thirty steps from the jury box; that
the jury filed out, and when they got to the door of the toilet room
the deputy sheriff discovered that one of the jurors was not with them.
He returned to the jury box and found the juror, T. H. Spain, sitting
in the box. He took him and went to the toilet room where the bal-
ance of the jury was; that the separation was not more than six or
eight minutes; that not a word passed between this absent juror and
any outside party. Now, complaint is made before this court that this

was such misconduct and separation on the part of the jury as would vitiate the verdict, and for that ground this case should be reversed. Article 725 of the Code of Criminal Procedure provides: "After the jury has been sworn and impaneled to try any case of felony, they shall not be permitted to separate until they have returned a verdict, unless by permission of the court, with the consent of the attorney representing the State, and the defendant, and in charge of an officer." This article has been before this court for construction in many cases, and where there has been a substantial violation of this article this court has not hesitated to reverse the judgment of the court below wherever the testimony showed that the jury separated, and such separation resulted in injury to the appellant, and even though injury did not result to appellant, if the separation was such as to place the escaped juror in a position where he might be tampered with, but this court has never extended the rule to the point that has been asked for in this case. In Champ v. State, 32 Texas Crim. Rep., 87, this court held that an accidental separation of the jury for a few minutes will not constitute reversible error, where there was not the slightest possibility that they were thereby influenced in their findings; and in Wakefield v. State, 41 Texas, 556, the Supreme Court held that a juror separated from the others without permission of the court, and unaccompanied by an officer, is not of itself sufficient ground for a new trial, it not appearing that such separation had any effect on the fairness of the trial. The case most nearly in point, however, is the case of Jones v. State, 13 Texas, 168, where it was held that where the jury separated while the bailiff was conducting them through a crowd, but it did not appear that they had spoken to anyone, the separation was not such as to vitiate their verdict; and in the case of Jack v. State, 26 Texas, 1, the Supreme Court said: "It must be shown that the misconduct or separation has affected the fairness or impartiality of the trial." The mere separation of a jury pending verdict is not cause for a new trial; in addition to the separation, in contravention of law, it must be further made to appear that by reason of such separation probable injustice to the accused has been occasioned. See Ogle v. State, 16 Texas Crim. App., 361; Defriend v. State, 22 Texas Crim. App., 570; Stewart v. State, 31 Texas Crim. Rep., 153; Taylor v. State, 38 Texas Crim. Rep., 552. It is unnecessary to cite further authorities upon this subject. Suffice it to say that there is not a circumstance or a suspicion that the mere accidental separation of the jury in this case could in anywise have affected the verdict, or could have thrown a shadow upon the impartiality and fairness of the trial in this case.

Owing to the death penalty assessed by the jury we have thought it proper to notice every possible objection that could be urged in this case. However, we have inspected the record and transcript filed in this court, and we have been unable to discover any error in the trial of the case in the court below that would justify this court in disturbing the solemn verdict of a jury that was impaneled to try this

case. Ordinarily, cases of this sort are such as to arouse public indignation, and sometimes public feeling does invade the jury box, but there is not a thing in this record that would suggest to the mind of any fair and candid man that there was anything that transpired in the court below that would suggest anything other than a fair and impartial trial under the forms of law by a jury selected as required by law, and this court feels constrained to not only affirm this case, but to say that any other verdict than the one rendered could not be said to meet the demands of the law.

Finding no error to justify a reversal, the judgment of the court below is in all things affirmed.

*Affirmed.*

ON REHEARING.

March 23, 1910.

McCORD, JUDGE.—On the 12th day of January, 1910, this case was affirmed, and on January 26 appellant filed a motion for rehearing on the ground that the court was in error in affirming the judgment; and on February 9 appellant filed an amended motion for rehearing on the ground that the judgment of the lower court, as it appears from the certified copy thereof filed herein, is wholly insufficient and erroneous in that this being a capital case, said judgment nowhere recites nor adjudges, as the law requires, either (1) that the defendant was arraigned in the court below; (2) that the jury was either selected, empaneled or sworn; (3) that any evidence was submitted; (4) that the jury was charged by the court; or (5) that the verdict was returned into open court by the jury. In reply to this amended motion the State has filed a motion to correct and reform the judgment and that when so corrected and reformed that the motion for rehearing be overruled. An inspection of the record before this court when the case was affirmed shows a complete and perfect judgment complying with every provision of article 831 of the Code of Criminal Procedure, and there is nothing in the transcript that would suggest that any omissions of the provisions of said article had been made in the trial of the case. A certified copy of the entries that were made is now before this court and this certified copy shows that the judgment, as contained in the transcript on file, is incorrect in that no such judgment as set out in the transcript was ever entered upon the minutes of the court. The following seems to have been the only entry ever made in the court below in this case:

"Friday, June 25, 1909.

"Court convened pursuant to adjournment, present same as on yesterday.

"The State of Texas
        v.                    &    9533.
Bubber Robinson.

"On a former day of this term, to wit: Wednesday, June 23, A. D. 1909, this cause being called for trial, came the county attorney for the State, and the defendant, Bubber Robinson, in his own proper person, and by his attorney, and announced ready for trial, and the defendant pleaded not guilty.

"Thereupon came a jury of twelve good and lawful men, to wit: 'We, the jury, find the defendant, Bubber Robinson, guilty as charged in the indictment of murder in the first degree and assess his punishment at death.'

"It is therefore ordered, adjudged and decreed by the court that the verdict of the jury be in all things approved and confirmed; that the defendant, Bubber Robinson, is adjudged to be guilty of murder in the first degree as found by the verdict of the jury as aforesaid, and that his punishment at death, and that he be remanded to the custody of the sheriff of Dallas County to await the further order of this court."

Article 831 of the Code of Criminal Procedure defines a judgment to be: "A final judgment is the declaration of the court entered of record, showing: 1. The title and number of the case. 2. That the case was called for trial and that the parties appeared. 3. The plea of the defendant. 4. The selection, impaneling and swearing of the jury. 5. The submission of the evidence. 6. That the jury was charged by the court. 7. The return of the verdict. 8. The verdict. 9. In the case of a conviction that it is considered by the court that the defendant is adjudged to be guilty of the offense as found by the jury; or in case of acquittal that the defendant be discharged. 10. That the defendant be punished as has been determined by the jury in cases where they have the right to determine the amount or the duration and the place of punishment in accordance with the nature and terms of the punishment prescribed in the verdict." Hence, it may be said that a judgment consists of two parts: (1) The facts judicially ascertained, together with the manner of ascertaining them, entered of record; (2) the recorded declaration of the court pronouncing the legal consequences of the facts thus judicially ascertained. Both of these parts are equally essential. See Mayfield v. State, 40 Texas, 289; Butler v. State, 1 Texas Crim. App., 638; Choate v. State, 2 Texas Crim. App., 302; Calvin v. State, 23 Texas, 577; Pennington v. State, 11 Texas Crim. App., 281; Gaither v. State, 21 Texas Crim. App., 527. Unless the power is lodged in this court to reform and correct the judgment as entered below, this case will have to be reversed and remanded. Article 904 of the Code of Criminal Procedure provides that the

Court of Criminal Appeals may affirm the judgment of the court below, or may reverse and remand for a new trial, or may reverse and dismiss the case, or may reform and correct the judgment, as the law and the nature of the case may require, but in all cases the court shall presume that the venue was proved in the court below; (2) that the jury was properly impaneled and sworn; (3) that the defendant was arraigned; (4) that he pleaded to the indictment; (5) that the charge of the court was certified by the judge and filed by the clerk of the court before it was read to the jury, unless such matters were made an issue in the court below. Now, an inspection of the certified copy of the judgment, as entered before us, shows that three requisites of the judgment have been omitted from the entry in this case. First, it fails to show that any evidence was submitted; second, that the jury was charged by the court; and, third, that the verdict of the jury was returned into open court. Article 904 was amended by the Act of 1897 by adding that it shall be presumed by this court that the venue was proven, etc. Before said amendment of 1897 was passed this court had held that a failure of the judgment to recite the plea of the defendant would necessitate a reversal of the judgment. See Wood v. State, 37 Texas Crim. Rep., 89; and that a judgment failing to show the selection of a jury would be cause for reversal. Yates v. State, 37 Texas 'Crim. App., 347. Before the amendment of article 904, this court held in the case of Creswell v. State, reported in 37 Texas Crim. Rep., 335, 39 S. W. Rep., 935, and also in the case of Oliver v. State, 40 S. W. Rep., 273, that a judgment failing to show that the evidence was introduced on the trial was cause for reversal. It may, however, be stated that in all of these cases there had been no motion made by the State to correct or reform the judgments of the court below. Commencing with the case of McDonald v. State, 14 Texas Crim. App., 504; Reyna v. State, 26 Texas Crim. App., 666; O'Bryan v. State, 27 Texas Crim. App., 339, it has been held that it was within the power of the Court of Criminal Appeals to reform and correct the judgments of the courts below so as to speak correctly what transpired in the court below. It seems, however, in Small's case, 38 S. W. Rep., 798, it was held that this court did not have the power to amend the sentence of the court below and that the sentence was more than a mere formal matter, and that it would not be presumed that the record, being the final judgment of the court, spoke an untruth and that the case should be reversed in order that the prisoner might be resentenced. Reaching the conclusion that this court did in this case, it practically overruled the line of cases commencing with McDonald v. State, supra. The Small case was then followed by the cases of Barfield v. State, 41 S. W. Rep., 610; Womble v. State, 43 S. W. Rep., 114, and Longoria v. State, 44 S. W. Rep., 1089. In the Longoria case there was no judgment entered in the court below on the verdict that had been returned into court. It seems that in that case the power to reform was not called to the attention of the court. The case was simply dismissed

because it did not contain a final judgment. The case of Bullard v. State, 50 S. W. Rep., 348, was where the judgment of the court below as contained in the record, was made cumulative to commence upon the expiration of a judgment in another case. The court held that there was no testimony authorizing the cumulation and that under the authority of article 904, Code of Criminal Procedure, this court had power to correct the judgment and make the appellant's sentence commence at once. In Burks v. State, 55 S. W. Rep., 824, the appellant was convicted for passing as true a forged instrument in writing. The jury found him guilty as charged in the indictment. The judgment of the court found him guilty of forgery, and this court held that the same was evidently a clerical mistake and that the power was in this court to correct the judgment. See Chappell v. State, decided at this term. It may be stated that in the Small case, supra, Judge Davidson dissented. In Turner's case, 44 Texas Crim. Rep., 69, all the judges concurring, it was held that the judgment could be reformed in accordance with the holding of the court in the Burk and Bullard cases, supra. It may be further stated that in the Burk, Turner and Bullard cases, supra, this court went back to the rule announced in the McDonald case, supra, and overruled the Small case and the cases following it. In McCorquodale v. State, 54 Texas Crim. Rep., 344, the court reaffirmed the doctrine laid down in McDonald's case and followed it in Burk's case. The question before the court in the McCorquodale case arose as follows: McCorquodale had been convicted of murder in the first degree with a life sentence. His case had been affirmed by this court and motion for rehearing overruled. The State, through her Assistant Attorney-General, after the affirmance of the case, filed a motion asking that the mandate be withheld and that the judgment be corrected and reformed, as the transcript failed to contain a complete judgment against appellant. The judgment as contained in the transcript was complete down to the 9th and 10th requirements of article 831, Code of Criminal Procedure. These requirements were omitted, that is, the judgment failed to state that it is considered by the court that defendant is adjudged to be guilty of the offense as found by the jury, and that defendant be punished as determined by the jury. This court by said motion was requested to reform the judgment and correct the same so as to include the 9th and 10th requirements of said article 831, Code of Criminal Procedure. After a review of all the authorities this court held that the power belonged to this court to correct the judgment. Now then, if the rule in the McCorquodale case, supra, is to be followed which authorizes this court to add something to the judgment of the court below that had been entirely omitted and which could not be presumed under article 837 of the Code of Criminal Procedure, then may not this court look to the record in this case to determine whether the judge's charge had been filed, and whether the evidence had been introduced and whether the jury had retired to consider their verdict? And if so important

a part as the declaration and finding of the court upon the verdict of the jury pronouncing that the defendant be adjudged guilty as found by the jury can be supplied by this court, most certainly where the record shows that these other requirements had been complied with, but omitted to be entered by the clerk, we can see no reason to depart from the rule as laid down in the said McCorquodale case. Now, under article 837, Code of Criminal Procedure, it is provided: "When from any cause whatever there is a failure to enter judgment and pronounce sentence upon conviction during the term, the judgment may be entered and sentence pronounced at any succeeding term of the court, unless a new trial has been granted, or the judgment arrested, or an appeal has been taken." Therefore, if the power is lodged in the court below, under the provisions of the above article, to enter judgment and pronounce sentence, even at a succeeding term of the court, why should the case be sent back to make the correction? This court has exactly the same data here for the correction of said judgment that the court would have were it sent back. Here we have all the foundation of the judgment, including the verdict of the jury; the statement of facts; we have even the final judgment pronouncing the sentence of the court; we have sufficient data before us to show that the evidence was introduced; we have the judge's charge with the file marks; we have the verdict of the jury in the record, and we have all the data before us. We, therefore, hold that it is not only within the power of this court to correct the judgment of the court below, but to reform the same, and it is accordingly so done; and the judgment will be so corrected as to make it read as follows:

"The State of Texas        .        In the Criminal District Court,
      v.          No. 9533.     Dallas County, Texas; April
Bubber Robinson.                Term, A. D. 1909.

"On a former day of this term, to wit: Wednesday, June 23, A. D. 1909, this cause being called for trial came the county attorney for the State and the defendant, Bubber Robinson, in his own proper person and by his attorney, and announced ready for trial; the defendant, Bubber Robinson, pleaded not guilty.

"Thereupon came a jury of twelve good and lawful men, to wit: Jess Hassell and eleven others, who, being duly empaneled and sworn as the law directs, and after hearing the evidence, argument of counsel and receiving the charge of the court, retired to consider of their verdict, and afterwards came and returned into open court the following verdict, to wit:

" 'We, the jury, find the defendant, Bubber Robinson, guilty as charged in the indictment of murder in the first degree and assess his punishment at death. Jess Hassell, Foreman.'

"It is therefore ordered, adjudged and decreed by the court that the verdict of the jury be in all things approved and confirmed; that the

defendant, Bubber Robinson, is adjudged to be guilty of the offense of murder in the first degree, as found by the verdict of the jury aforesaid, and that his punishment be assessed at death, and he be remanded to the custody of the sheriff of Dallas County to await the further order of this court."

Following, therefore, the rule as laid down in the McCorquodale case, the judgment of the court below will be corrected, the motion for rehearing overruled and the State's motion to correct and reform granted, and same is accordingly done.

*Judgment reformed and motion for rehearing overruled.*