## THE PEOPLE, PLAINTIFF AND RESPONDENT, *v.* ALVAREZ, DEFENDANT AND APPELLANT.

### APPEAL from the District Court of Humacao in a Prosecution for Violation of the Internal Revenue Law.

No. 674.—Decided June 27, 1914.

INTERNAL REVENUE LAW—JUDGMENT—NEW TRIAL.—Considered alone and without reference to the transcript of the record, the judgment rendered in this case is defective and technically insufficient because it fails to state what section of the Internal Revenue Law was violated, but this of itself is not sufficient ground for the reversal of the judgment and the granting of a new trial.

ERRORS NOT PREJUDICIAL—CONSTRUCTION OF LAW—JUDGMENT.—The provisions of sections 362 and 364 of the Code of Criminal Procedure in relation to section 1 of the Act of May 30, 1904, should be construed liberally in the sense that judgments appealed from should not be reversed for defects which do not prejudice the accused and to the end of procuring a speedy, practical and free administration of justice.

JUDGMENT—MODIFICATION OF JUDGMENT.—In accordance with sections 362 and 364 of the Code of Criminal Procedure in relation to the Act of May 30, 1904, the Supreme Court is empowered to modify a judgment appealed from and affirm the same in its modified form when said judgment is defective in failing to state the section of the Internal Revenue Law violated by the accused, and for this purpose it may consider the record as a whole.

INTERNAL REVENUE LAW—SALE BY AGENT WITHOUT LICENSE—LICENSE OF PRINCIPAL.—When, as in the present case, a person makes a sale of liquors without the license required by the Internal Revenue Law, but acted in good faith as the agent or partner of the seller, the license which the principal has to sell liquors is sufficient to exempt the agent from liability under the Internal Revenue Law.

The facts are stated in the opinion.

*Mr. Charles E. Foote,* fiscal, for The People.

*Mr. Adrián Agosto* for the appellant.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

This case originated in the Municipal Court of Vieques upon a somewhat ambiguous complaint entitled *"The People of Porto Rico v. A. Alvarez & Brothers, of San Juan, Porto Rico,"* charging the defendant, Serafín Alvarez, who is carefully described throughout wherever mentioned by name as a partner of the said mercantile firm of A. Alvarez & Brothers,

of San Juan, Porto Rico, with having sold two cases of wine without having previously provided himself with a wholesale liquor license, in violation of section 18 of the Revenue Law of 1911.

At the conclusion of the trial *de novo* upon this complaint in the district court the latter rendered the following judgment:

"This 15th day of November, 1913, the day set for the hearing of this case, The People of Porto Rico appeared by its *fiscal* and the defendant in person and by his attorney, Adrián Agosto, the complaint was read and the defendant pleaded not guilty. Evidence was introduced, the parties were heard, and the court finds the defendant guilty of the offense of violating the law of internal revenue and imposes the penalty of $100 fine and, in default of payment thereof, one month in jail and costs,"

From this judgment the defendant appealed and sets up as his first assignment of error that the judgment is insufficient. The *fiscal* acquiesces in this view of the case and recommends that the judgment be reversed and the case remanded for a new trial. That the judgment as it stands, and considered alone without reference to other parts of the record, is in fact defective and technically insufficient, is not open to question. But it does not follow that the case must, for this reason, be remanded for a new trial.

In the case of *Pointer* v. *United States,* 151 U. S., 396, Mr. Justice Harlan said:

"The specific objection to the sentence is that it does not state the offense of which the defendant was found guilty, or that the defendant was guilty of any named crime. This objection is technical, rather than substantial. * * *. While the record of a criminal case must state what will affirmatively show the offense, the steps, without which the sentence cannot be good, and the sentence itself, 'all parts of the record are to be interpreted together, effect being given to all, if possible, and a deficiency at one place may be supplied by what appears in another.' 1 Bishop's Cr. Pr., secs. 1347,

1348. For these reasons the objection last stated is not sustained." See also *Sandy White* v. *United States,* 164 U. S., 100; *Demolli* v. *United States,* 6 L. R. A. (new series), 424; *People* v. *Campos,* 17 P. R. R., 1144, 1147.

Sections 362 and 364 of our Code of Criminal Procedure read as follows:

"Section 362.—After hearing the appeal, the Supreme Court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties."

"Section 364.—The Supreme Court may reverse, affirm, or modify the judgment or order appealed from, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial."

Section 1 of an act "Relating to the reversal of judgments in criminal cases by the Supreme Court," etc., approved May 30, 1904, Acts of 1905, page 10, reads as follows:

"Section 1.—Whenever it appears from the record in any criminal case upon appeal in the Supreme Court, that any requirement of the law has been disregarded by the trial court, the judgment shall not be reversed, unless the error appearing from the record was calculated to injure the rights of either of the parties, and was duly excepted to in the trial court: *Provided, however,* That the appellate court may take cognizance of fundamental errors, appearing in the record, although not excepted to, and render such judgment thereon as the facts and the law may require."

Sections 362 and 364 above quoted are practically identical with section 6957 of the Compiled Laws of 1909 and section 6955 of the Code of Criminal Procedure of Oklahoma, with the exception that the last-mentioned section of the Oklahoma code is not even so broad as section 364 of our code, in that it omits the power conferred on the latter to set aside, affirm, or modify any or all of the preceedings subsequent to, or dependent upon, the judgment or order appealed from and expressly provides that in any event the cause must

be remanded to the trial court. Section 364 is also quite similar to article 904 of the Texas Code of Criminal Procedure.

But few appellate courts in the United States are vested with such broad authority as is conferred by these statutes which, reflecting as they do the most advanced thought of the present day, constitute a somewhat radical departure from the common law and a long stride in the direction of practical common sense, reason and justice in criminal procedure. It follows, of course, that the decisions of courts of last resort construing such statutory provisions are not numerous. The courts of the two States last above mentioned, however, have frequently exercised the powers thus given them and, brushing aside all technical objections, errors and defects not affecting the substantial rights of the parties, have adopted a most liberal interpretation of the sections above referred to in full consonance with the broad scope of the fundamental idea underlying the same and have in practice developed a clearly defined and steadily growing trend toward the speedy, practical and untrammeled administration of substantial justice. See *Turner* v. *State,* 126 Pac., 455; *Robinson* v. *State,* 126 S. W., 276; *McCorquodale* v. *State,* 98 S. W., 879; *Turner* v. *State,* 68 S. W., 511; *Burks* v. *State,* 55 S. W., 825.

In the case at bar we have before us in addition to the judgment of the court below and other matters of record, such as the entry in the minutes of the court as to the appearance of the defendant and his plea to the charge and the notice of appeal, an authentic verbatim copy of the original complaint and a full statement of the case showing in detail the evidence introduced and the various incidents of the trial. There can be no possible doubt upon the whole record as to the specific offense with which the defendant was charged and of which he was in fact convicted. This court has here practically the same data for the correction of the said judgment that the district court had before it at the time of rendering the same. The defect in question once cured, neither

the error of the court below in omitting to specify the exact section of the revenue law violated nor the action of this court in supplying the omission could, under such circumstances, seriously infringe any substantial right of the defendant. The obvious purpose of the law of 1904 above quoted, supplementing as it does sections 362 and 364 of the Code of Criminal Procedure, is to forbid the remanding of just such cases as the present for a new trial that could serve no useful purpose.

If, therefore, the failure of the court below to specify in its judgment the exact offense of which the defendant was convicted were the only error apparent upon the record, it would be our plain duty and we would not hesitate to modify the same in so far as necessary to cure the defect and then affirm the judgment as modified.

There is, however, a more serious and fundamental question which, in the view we take of the matter, requires a different disposition of the case and at the same time relieves us of the necessity of discussing in detail the various other questions raised under the remaining assignments.

The complaint is, as above suggested, open to a certain extent to the charge of duplicity in that it clearly seeks to charge the defendant, both individually and in a representative capacity, as a member of the firm, or agent or both, of A. Alvarez & Brothers. The case seems to have proceeded upon the theory last mentioned as much as any other up to the time of a motion for acquittal, in the nature of a demurrer to the evidence, upon the ground that the *fiscal* had not proved the existence of the mercantile firm nor the connection of the defendant therewith. The court in overruling this motion rejected such parts of the complaint as referred to the firm of A. Alvarez & Brothers as mere surplusage and the case proceeded. Whatever the facts or the law may be as to the theory or theories of the court and the parties at the time of the trial, or as to the merits of the various questions now sought to be determined on appeal, it seems rea-

sonably clear that the court in convicting the defendant acted under the impression that it was incumbent upon the latter after having been shown to have made the sale to produce an individual license irrespective of the capacity in which he acted. Upon no other hypothesis can the judgment and sentence be satisfactorily accounted for under the evidence.

The evidence pertinent to the main issue, briefly stated, is as follows:

PAUL RUELL, a revenue agent, testifies that upon his arrival in Vieques he found that Juan Rijos had bought seventeens cases of rum, two of muscatel wine, and one of anis; that Rijos delivered to him a receipt signed by A. Alvarez showing that he had paid $50 for the twenty cases of liquor; that defendant had no license, according to the records in the office of the collector in Vieques; that A. Alvarez & Brothers had no license to sell at wholesale in Vieques; that the liquors in question had been deposited for two years in the house of Antolino Luis; that the cases were marked with the name of ''Ponce'' with other names erased, but as to this the recollection of witness is not clear.

JUAN RIJOS testifies that defendant sold him twenty cases of liquor: rum, anis, and wine; that he did not know where the cases came from; that he took them from the house of Antolino Luis; that he took a receipt from the defendant for $50; that he did not know who was the owner of the twenty cases nor whether the defendant acted as agent in making the sale; that the defendant said to him, ''I will sell you twenty cases of liquor that I have in the house of Antolino Luis and that I have to take away,'' and that after some haggling they agreed upon the price and then went to the house of Antolino Luis to get the liquor.

ANTOLINO LUIS testifies that he had in his house twenty cases of liquor that he had bought from R. Pons which he did not want and which he delivered to the defendant when the latter came to collect the account by order of Bubonis; that the defendant said upon his arrival, ''I have come to

collect for that liquor,'' and witness told him that the liquor was there and that witness could not keep it; that the defendant showed witness a paper or letter from Bubonis and, R. Pons being the owner of the liquor, witness delivered the same to the defendant; that the defendant asked him if witness was going to pay and witness replied that he had no money but that the cases were there and that the defendant took them and removed them from the house and sold them to Juan Rijos; that A. Alvarez & Brothers had nothing to do with the sale nor had the said firm any connection whatsoever with the purchase made by witness from R. Pons & Company; that A. Alvarez & Brothers had had nothing to do with the liquor nor had the said firm ever written to witness; that the defendant had never had anything to do with said liquor until the day that he appeared at the house of witness to collect with a letter from Bubonis; that the liquor was not in his house as a deposit; that witness had bought it to establish a business, but was unable to do so and he (Pons or agent?) was there one day and said to witness, ''Leave it here until I send for it''; that he had either to return the liquor or pay R. Pons but not A. Alvarez & Brothers; that the person who was first in the house of witness and told him to leave the liquor there until he should send for it was an employee or partner of R. Pons; that the defendant came to look for the liquor in the name of Bubonis and removed it; that he delivered the twenty cases to the defendant and the same were sold to Juan Rijos in the presence of witness; that the defendant came to collect from witness for the liquor on behalf of Bubonis but that witness could not pay and he delivered the liquor to the defendant; that he did not pay because he did not have the money; that he owed that amount for the cases and delivered them to the defendant.

José S. Aybar Sánchez, Municipal Judge of Vieques, identified the receipt as the handwriting of the defendant and the receipt, which was introduced in evidence, reads as follows: ''$50. May 22, 1913. Received of Don Juan Rijos

the sum of $50 for various cases of liquor.   (Signed) A. Alvarez & Brothers.''

The defense introduced in evidence three certificates from the Treasurer of Porto Rico showing that the mercantile firm of A. Alvarez & Brothers held a wholesale liquor license during the years 1911, 1912, and 1913.

AUGUSTO BUBONIS testified for the defense that he had a matter pending with Antolino Luis, of Vieques; that he had an invoice of liquor sold some two years before which had been sold to (by?) Eduardo Pons as representative of R. Pons & Company, which firm having gone into bankruptcy witness acquired its liabilities and assets; that the mercantile house of witness was called Bubonis, Sosa & Company, but that the same had dissolved and witness alone remained; that witness acquired the said account amounting to $78 in liquors; that he had not sold said account to A. Alvarez & Brothers; that the liquors were in the possession of Antolino Luis; that he first drew upon the latter for the amount of the bill through the bank and the bank returned the account with a letter saying that they had written Antolino Luis and that the latter had not replied; that afterwards witness himself addressed a registered letter to Antolino Luis, of which witness has a copy and to which he received no reply; that, one day, Serafín Alvarez passed by his house and in the course of conversation told witness that he was making a trip over the Island and witness asked him if he were going to Vieques, the defendant replying in the affirmative; that thereupon witness told the defendant that he had an account against Antolino Luis whom he did not know, and that he would give the same to the defendant for collection in whatever way the defendant might deem most convenient, and he gave the defendant a letter authorizing him to collect said amount; that witness acquired the account from Bubonis, Sosa & Company as liquidator of that firm upon its dissolution; that witness did not transfer the liquor to A. Alvarez & Brothers, but only gave the letter to Serafín Alvarez in order that he

might collect the bill for said liquors from Antolino Luis; that Serafín Alvarez was the agent (*mandatario*) of witness; that witness did not direct Alvarez to sell the said liquors without a license; that witness is a wholesale liquor dealer and in 1911 was a wholesale liquor dealer and also in 1912 and '13; that witness sold liquors throughout the Island of Porto Rico and was authorized to sell rum, anis, wines, and liquors; that witness gave the defendant the account to collect; that witness gave the defendant a letter authorizing him to make the collection because some time had passed since the sale of the liquors and witness in fact did not know whether they existed or did not exist; that the authority conferred by witness upon the defendant for the sale of said liquors was nothing more than the collection of the account or that the defendant should see what he could do; that afterwards the defendant told him that he had collected $50 for the liquors; that he had sold them and turned over to witness the money.

There is not a scintilla of evidence in the whole record to indicate that the defendant, Serafín Alvarez, was or ever had been the owner in whole or in part of the twenty cases of liquor, or otherwise had any personal interest whatsoever therein, or that he had acted for himself in making the sale, or that he had any financial interest whatsoever in the transaction. It seems reasonably clear that he acted as the agent of Pons or Bubonis pursuant to the instructions of the latter, and for some unexplained reason—possibly from force of habit—gave a receipt in the name of A. Alvarez & Brothers. But it is wholly immaterial whether he acted as agent of Pons or Bubonis, or as agent or as member of the firm of A. Alvarez & Brothers. In either case his principal was provided with a proper wholesale license, to the shelter of which he is entitled. When in a case like the present the agency is in *bona fide* subordination to the principal, the principal's license protects the agent. 2 Wharton Criminal Law, 11th ed., 1976; *City of Emporia* v. *Becker,* 12 L. R. A. (new series),

946, and cases cited in case note; *French* v. *Toledo,* 25 L. R. A. (new series), 748; *State* v. *Rosenbaum,* 15 L. R. A. (new series), 288.

The evidence, therefore, from whatever point of view it be regarded, is wholly insufficient to support the judgment. The latter should be reversed and the case dismissed.

*Judgment reversed and defendant acquitted.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.