El Pueblo, Demandante y Apelado, *v.* Alvarez, Acusado y Apelante.

Apelación procedente de la Corte de Distrito de Humacao en causa por infracción de la ley de rentas internas.

No. 674.—Resuelto en junio 27, 1914.

Sentencia Defectuosa—Infracción de la Ley de Rentas Internas—Omisión de Expresar el Artículo Infringido—Nuevo Juicio.—Considerada aisladamente sin referencia a los autos la sentencia dictada en este caso es defectuosa y técnicamente insuficiente por no expresar el artículo de la Ley de Rentas Internas infringido, pero esto por sí solo no es motivo bastante para revocar la sentencia y ordenar la celebración de un nuevo juicio.

Errores que no Perjudican al Acusado—Interpretación Liberal de la Ley— Revocación de Sentencia.—Los preceptos de los artículos 362 y 364 del Código de Enjuiciamiento Criminal en relación con el artículo 1 de la ley de mayo 30, 1904, deben ser interpretados liberalmente en el sentido de que no se revoquen las sentencias apeladas por defectos que no perjudican al acusado y que se haga rápida, práctica y libre administración de verdadera justicia.

Sentencia Defectuosa—Modificación de la Sentencia por el Tribunal Supremo—Corrección de la Sentencia Refiriéndola a la Totalidad de los Autos.—El Tribunal Supremo, de acuerdo con los artículos 362 y 364 del Código de Enjuiciamiento Criminal, en relación con la ley de mayo 30, 1904, tiene facultades para modificar una sentencia apelada y confirmarla en la forma modificada, cuando dicha sentencia resulte defectuosa por no expresar el artículo de la Ley de Rentas Internas infringido por el acusado, y para lo cual puede examinar la totalidad de los autos.

Infracción de la Ley de Rentas Internas—Venta de Licores por un Mandatario sin Patente—Licencia del Principal.—Cuando, como en el presente caso, una persona lleva a efecto una venta de licores sin la patente que exige la Ley de Rentas Internas, pero actuó de buena fe como mandatario del vendedor o como socio del mismo, la licencia que tiene el mandante para vender licores es suficiente para que el mandatario no infrinja la Ley de Rentas Internas.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

Abogado del acusado: *Sr. Adrián Agosto.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

Se inició esta causa en la Corte Municipal de Vieques con motivo de una denuncia algo ambigua que fué presentada,

titulada *"El Pueblo de Puerto Rico* v. *A. Alvarez y Hermanos,* de San Juan, Puerto Rico,'' imputando al acusado Serafín Alvarez, a quien se le describe cuidadosamente donde quiera que se le menciona como socio de la casa comercial de A. Alvarez y Hermanos, de San Juan, Puerto Rico, el hecho de haber vendido dos cajas de vino sin haberse provisto primeramente de la correspondiente patente al por mayor para vender licores, infringiendo por ello el artículo 18 de la Ley de Rentas, aprobada en 1911.

Terminado el juicio *de novo* que tuvo lugar ante la corte de Distrito a virtud de la expresada denuncia, dicha corte dictó la siguiente sentencia:

"Hoy día 15 de noviembre de 1913, día señalado para la vista de este caso, compareció El Pueblo de Puerto Rico, por su Fiscal, y el acusado en propia persona y por su abogado Adrián Agosto. Se dió lectura a la acusación a la que contestó el acusado alegando su inocencia. Pasó la prueba, informaron las partes y la corte declara al acusado culpable del delito de infracción a la Ley de Rentas Internas y le impone la pena de cien dólares de multa y en defecto de pago a sufrir un mes de cárcel y las costas."

Contra esta sentencia el acusado interpuso apelación alegando como primer error que la sentencia es insuficiente. El Fiscal ha mostrado su conformidad en lo que respecta a este punto habiendo solicitado la revocación de la sentencia apelada y que el caso sea devuelto a la corte inferior para la celebración de un nuevo juicio. Es un hecho que no admite discusión alguna, que la sentencia tal como consta y considerada aisladamente sin hacer referencia a otras partes de los autos es en realidad defectuosa y técnicamente insuficiente. Pero de esto no se infiere que por esta razón deba devolverse el caso a la corte inferior para la celebración de un nuevo juicio.

En el caso de *Pointer* v. *United States,* 151 U. S., 396, el Juez Sr. Harlan, se expresó como sigue:

"La objeción específica que se ha formulado a la sentencia es la que en la misma no se expresa el delito por el cual el acusado fué

declarado culpable, o que dicho acusado fuera culpable de algún determinado delito   Esta objeción es más bien técnica que sustancial.  *  *  *.  Aunque en los autos de una causa criminal debe constar aquella parte en que de modo positivo se muestre el delito, las diligencias sin las cuales la sentencia no puede ser válida, y la sentencia misma 'todas las partes de los autos deberán ser interpretadas conjuntamente, dándose efecto a todas, de ser posible, y corrigiéndose cualquier deficiencia que exista en alguna parte por lo que aparezca de otra.'  1 Bishop Cr. Pro, secciones 1347, 1348.  Por tales razones se declara sin lugar la objeción a que se ha hecho referencia últimamente.''  Véanse también los casos de *Sandy White* v. *United States*, 164 U. S., 100; *Denolli* v. *United States*, 6 L. R. A. (nueva serie), 424; *People* v. *Campos*, 17 D. P. R., 1190, 1194.

Los artículos 362 y 364 de nuestro Código de Enjuiciamiento Criminal, son como sigue:

"Artículo 362.—Después de celebrada la vista de la apelación, la Corte Suprema debe dictar sentencia sin parar mientes en los errores o defectos técnicos o de forma, o en excepciones que no afecten los derechos sustanciales de las partes.

"Artículo 364.—La Corte Suprema puede revocar, confirmar o modificar el fallo o auto contra el cual se haya apelado, o desestimar, confirmar, o modificar cualquiera o todas las diligencias posteriores a dicho fallo o auto, o que de éste dependan y si lo considerase justo, puede dictar u ordenar la celebración de nuevo juicio."

El artículo 1 de una "ley relativa a la revocación de sentencias en causas criminales por la Corte Suprema," etc., aprobada en mayo 30, de 1904, Leyes de 1905, página 16, expresa lo siguiente:

"Artículo 1.—Siempre que resultare de los autos en alguna causa criminal apelada a la Corte Suprema, que cualquier requisito legal haya sido desatendido por el tribunal sentenciador, no se anulará la sentencia a menos que el error que de los autos resultare, tendiere a perjudicar los derechos de cualquiera de las partes, y se hubiere interpuesto la debida excepción en el tribunal sentenciador; *disponiéndose, sin embargo,* que el tribunal de apelación podrá conocer de errores fundamentales que aparecieren en los autos, aun cuando no se hubiere interpuesto objeción a ellos, y fallar sobre los mismos con arreglo al derecho que de los hechos se desprendiere."

Los artículos 362 y 364 arriba citados, son prácticamente idénticos al 6957 de las Leyes Compiladas de 1909, y el artículo 6955 del Código de Enjuiciamiento Criminal de Oklahoma, con la sola excepción de que este último artículo del Código de Oklahoma ni siquiera es tan liberal como el 364 de nuestro código, pues en dicho artículo no se hace mención de las facultades conferidas por este último para desestimar, confirmar o modificar cualquiera o todas las diligencias posteriores al fallo o auto apelado; y determina de modo expreso que la causa deberá en cualquier caso ser devuelta a la corte inferior. El artículo 364 también es bastante parecido a la sección 904 del Código de Enjuiciamiento Criminal de Texas.

Pocas son, sin embargo, las cortes de apelación en los Estados Unidos que están investidas de una facultad tan amplia como la conferida por estos estatutos, los cuales, reflejando como reflejan el pensamiento más elevado de la época presente, constituyen una desviación algo radical de la ley común y un gran paso de avance en la senda del verdadero sentido común, de la razón y de la justicia en el procedimiento criminal. De aquí resulta, desde luego, que las resoluciones que han sido dictadas por las cortes de última instancia al interpretar tales preceptos estatutorios no son numerosas. Sin embargo, las cortes de los dos últimos Estados a que se ha hecho referencia frecuentemente han ejercitado las facultades que de tal modo les han sido conferidas y dejando a un lado todas las objeciones técnicas, errores y defectos que no afectan a los derechos sustanciales de las partes, han adoptado la interpretación más liberal de los artículos ya mencionados en perfecta consonancia con la esfera de acción de la idea fundamental que los informa y han desarrollado, en resumen, una tendencia claramente definida que crece invariablemente en el sentido de una rápida, práctica y libre administración de verdadera justicia. Véanse los casos de *Turner* v. *State,* 126 Pac., 455; *Robinson* v. *State,* 126 S. W., 276; *McCorquodale* v. *State,* 98 S. W., 879; *Turner* v. *State,* 68 S. W., 511; *Burks* v. *State,* 55 S. W., 825.

En el presente caso, además de la sentencia de la corte inferior y de otros documentos de los autos tales como el asiento hecho en las minutas de la corte acerca de la comparecencia del acusado, la alegación que hizo él y el escrito de apelación, se ha sometido también a nuestra consideración una copia literal y auténtica de la primitiva denuncia y una exposición del caso completa en la que aparece detalladamente expresada la prueba que fué practicada durante el juicio como también los distintos incidentes habidos en él. Examinados los autos en todos sus aspectos, no puede haber duda alguna respecto al determinado delito que se imputó al acusado y por el cual fué en realidad declarado culpable. Este tribunal cuenta ahora prácticamente con los mismos datos para la corrección de la referida sentencia que aquellos que tuvo ante sí la corte de distrito al dictar su sentencia. Una vez subsanado el defecto en cuestión, ni el error cometido por la corte inferior al no determinar el artículo de la ley de rentas que fué infringido ni la acción tomada por este tribunal al corregir el error, podía, bajo tales circunstancias, ocasionar un grave perjuicio de los derechos sustanciales del acusado. El objeto manifiesto de la ley de 1904 arriba citada al adicionar, como lo hace, los artículos 362 y 364 del Código de Enjuiciamiento Criminal, es precisamente prohibir que casos como éste sean devueltos a la corte inferior para la celebración de un nuevo juicio lo que no ha de dar resultado práctico alguno.

Por tanto, si el único error que constara en los autos fuera el de la omisión en que incurrió la corte inferior al no determinar en su sentencia el verdadero delito por el cual fué declarado culpable el acusado, tendríamos claramente el deber, y en ello no vacilaríamos, de modificar la referida sentencia en lo que fuera necesario con el fin de subsanar dicho defecto y luego confirmarla en la forma modificada.

Existe, sin embargo, una cuestión más seria y fundamental la cual a nuestro juicio exige que el caso se resuelva en otra forma y que a la vez nos releve de la necesidad de tener

que discutir en todos sus detalles las demás cuestiones que
can sido promovidas en los restantes señalamientos de error.

La denuncia, como hemos visto, puede ser impugnada por
duplicidad, puesto que en ella claramente se trata de perse-
guir al acusado en ambos conceptos, individualmente y en la
capacidad que ostentaba como miembro de la razón social
o mandatario de la casa de A. Alvarez y Hermanos, o en
las dos capacidades. El juicio continuó al parecer en este
último supuesto como pudo serlo en cualquier otro hasta el
momento en que fué presentada la moción de sobreseimiento,
la cual se fundó en el hecho de no haber probado el fiscal la
existencia de dicha casa comercial así como tampoco la rela-
ción que existía entre el acusado y la referida casa. La corte
al desestimar esta moción hizo caso omiso de aquellas partes
de la denuncia que hacían referencia a la casa comercial de
A. Alvarez y Hermanos, por ser las mismas meramente super-
fluas, continuando la celebración del juicio. Cualesquiera que
sean los hechos o la lèy con respecto a la hipótesis o teorías
de la corte y las partes durante el juicio, o en cuanto a los
méritos de las diferentes cuestiones que hora se tratan de
resolver en apelación, parece razonablemente claro que al
declarar la corte culpable al acusado procedió en la creencia
de que dicho acusado, una vez probado que realizó la venta,
estaba en el deber de presentar una licencia personal pres-
cindiendo del carácter con que actuó. De acuerdo con la
prueba no puede explicarse satisfactoriamente dicho fallo
y sentencia sino por esta hipótesis.

La prueba pertinente a la cuestión principal brevemente
expresada es como sigue:

PAUL RUELL, agente de rentas internas, declara que a
su llegada a Vieques encontró que Juan Rijos había com-
prado diez y siete cajas de ron, dos de vino moscatel, y una
de anís; que Rijos le dió un recibo firmado por A. Alva-
rez el cual mostraba que él había pagado $50 por las veinte
cajas de licores; que el acusado no tenía ninguna licencia
según el registro de la oficina del colector en Vieques; que

A. Alvarez y Hermanos no tenía patente para vender al por mayor en Vieques; que los licores en cuestión hacía dos años que estaban depositados en la casa de Antonio Luis; que las cajas estaban marcadas con el nombre de "Ponce" con otros nombres borrados, pero en cuanto a este punto el testigo no recuerda bien.

Juan Rijos declara que el acusado le vendió veinte cajas de licores; ron, anís y vino; que no sabía de donde venían esos licores; que los cogió en casa de Antolino Luis; que el acusado le extendió un recibo por $50; que no sabía si era dueño de las veinte cajas o si el acusado actuó como mandatario al verificar la venta; que el acusado le dijo: "Te vendo veinte cajas de licores que tengo en casa de Antolino Luis y que tengo que recoger," y que después de regatear algo convinieron en el precio y fueron entonces a la casa de Antolino Luis a buscar el licor.

Antolino Luis declara que en su casa él tenía veinte cajas de licores que había comprado a R. Pons las que no quería y entregó al acusado cuando éste vino a cobrarle por orden de Bubonis; que al llegar el acusado dijo: "He venido a cobrar ese licor," y el testigo le dijo que estaba allí, que no podía quedarse con ellos; que el acusado enseñó al testigo un papel o carta que era de Bubonis y siendo R. Pons el dueño del licor, el testigo entregó dicho licor al acusado; que el acusado le dijo que si se lo iba a pagar y que él le respondió que no tenía dinero pero que allí estaban las cajas y entonces el acusado las cogió, las sacó de la casa y se las vendió a Juan Rijos; que A. Alvarez y Hermanos no ha tenido nada que ver con dicha venta ni tampoco ha tenido conexión alguna con motivo de la compra hecha por él a R. Pons & Ca.; que A. Alvarez y Hermanos no tuvo nada que ver con esos licores y dicha mercantil nunca ha escrito al testigo; que el acusado no había tenido nada que ver en relación con esos licores hasta el día que fué a casa del testigo con la carta de Bubonis a cobrar; que los licores no estaban en su casa en calidad de depósito; que los compró el testigo para estable-

cer un negocio, pero no pudo ser y él (¿Pons ò el mandata-
rio?) estuvo un día allí y le dijo al testigo: "Déjelos aquí
hasta que yo mande a buscarlos;" que tenía él que devol-
ver esos licores o pagar a R. Pons, pero no a A. Alvarez y
Hnos.; que la persona que primero estuvo en su casa y le
dijo que los dejara allí hasta que él los mandara a buscar,
fué un empleado o socio de R. Pons; que el acusado fué a
buscar esos licores en nombre de Bubonis y se los llevó; que
el le entregó las veinte cajas al acusado las que fueron ven-
didas a Juan Rijos en presencia del testigo; que el acusado
fué a cobrarle a él esos licores, pero por cuenta de Bubonis,
pero que él no le pudo pagar y entregó dichos licores al acu-
sado; que no le pagó porque no tenía dinero; que debía esa
cantidad por esas cajas y se las sentregó al acusado.

José S. AYBAR SÁNCHEZ, Juez Municipal de Vieques, iden-
tificó la firma del recibo la que sabe es la letra del acusado;
que el recibo que fué presentado como prueba es como sigue:
"$50.   Mayo 22 de 1913.   Recibí de Don Juan Rijos la suma
de cincuenta dólares, por varias cajas de licores.   (Firmado)
A. Alvarez & Hermanos."

La defensa presentó como prueba tres certificaciones del
Tesorero de Puerto Rico creditivas de que la mercantil de
A. Alvarez y Hermanos tenía patente para vender licores al
por mayor en los años 1911, 1912 y 1913.

AUGUSTO BUBONIS, testigo de la defensa, declaró que tuvo
un asunto pendiente con Antolino Luis, de Vieques; que él
tenía una factura de licores vendida hace dos años que se
la vendió a (¿por?) Eduardo Pons como representante de
R. Pons y Ca., cuya mercantil habiéndose declarado en quiebra
el testigo adquirió sus deudas y demás; que la casa mer-
cantil del testigo se llamaba "Bubonis, Sosa y Ca.," la que
se disolvió quedando solamente el testigo; que él adquirió
esa cuenta montante a $68 en licores; que él no le había ven-
dido esa cuenta a A. Alvarez y Hermanos; que los licores

estaban en poder de Antolino Luis; que él primeramente le
giró a éste la cuenta por medio del banco, y del banco le devol-
vieron la cuenta con una carta diciendo que le habían escrito
a Antolino Luis y no había contestado; que después el testigo
mismo le dirigió una carta certificada a Antolino Luis de la
cual tiene copia el testigo y no le contestó; que un día Sera-
fín Alvarez estando de paso por su casa y hablando le dijo
que iba a hacer un viaje por la isla y el testigo le preguntó
si no iba a Vieques, contestó que sí; que entonces el testigo
dijo al acusado que tenía una cuenta contra Antolino Luis
el que no sabía quién era y que se la iba a dar al acusado
para que se la cobrara de la manera que dicho acusado creyera
más conveniente, dándole una carta, autorizándole para el
cobro de dicha cantidad; que la cuenta la adquirió de Bubonis,
Sosa y Ca., después que la casa se disolvió y como liquidador
de la misma; que el testigo no trasmitió dichos licores a A.
Alvarez y Hermanos, sino que solamente le dió la carta a
Serafín Alvarez para que cobrara la cuenta de esos licores
a Antolino Luis; que Serafín Alvarez era un mandatario del
testigo; que el testigo no dió a Alvarez orden de vender
dichos licores sin una patente; que el testigo vendía licores
al por mayor en el año 1911, y también lo era en 1912 y 1913;
que él vendía licores en toda la Isla de Puerto Rico y podía
vender ron, anís, vinos y licores; que el testigo dió una carta
al acusado autorizándole para el cobro; porque había pa-
sado algún tiempo de la venta de esos licores; el testigo en
realidad no sabía si existía o no existía; que la autoridad
que el testigo había dado al acusado para la venta de dichos
licores era nada más que el cobro de la cuenta, o que mirara
a ver lo que podía hacer; que despnés el Sr. Alvarez le dijo
que había cobrado cincuenta dólares por esos licores; que los
había vendido y le entregó el dinero.

No aparece en todos los autos la más mínima prueba que
demuestre que el acusado Serafín Alvarez fuera o hubiera

sido alguna vez dueño en absoluto o en parte de las veinte cajas de licores, que tuviera algún interés personal en las mismas, o que al efectuar la referida venta hubiera actuado a nombre propio o tuviera algún interés pecuniario en la transacción. Parece razonablemente claro el hecho de que el mismo actuara como mandatario de Pons o Bubonis, de acuerdo con las instrucciones de este último, y que por cierto motivo que no se explica, quizás por la fuerza de la costumbre, dió un recibo a nombre de A. Alvarez y Hermanos. Pero es enteramente inmaterial el hecho de si el acusado actuó como mandatario de Pons o Bubonis, o como mandatario o socio de la mercantil de A. Alvarez y Hermanos. En uno u otro caso, su principal tenía la correspondiente patente al por mayor, a cuya protección tiene derecho el acusado. Cuando en un caso como el presente el mandatario procede de buena fe como subordinado del principal, la licencia de este último protege al primero. 2 Wharton sobre Ley Criminal, Edición 11ª., página 1976; *City of Emporia* v. *Becker,* 12 L. R. A. (nueva serie), página 946, y casos citados en la nota del caso; *French* v. *Toledo,* 25 L. R. A. (nueva serie), página 748; *State* v. *Rosenbaum,* 15 L. R. A. (nueva serie), página 288.

Por tanto, considerada la prueba desde cualquier punto de visita resulta la misma completamente insuficiente para sostener la sentencia. Debe revocarse la sentencia apelada y sobreseerse la causa.

> *Revocada la sentencia apelada y absuelto el acusado.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.